178 So. 489

**O'BRIEN et al. v. DELTA AIR COR-
PORATION.**

No. 34524.

Jan. 10, 1938.

Joseph H. Levy, of Shreveport, for appellants.

Eleanor N. Faulk and Travis Oliver, Jr., both of Monroe, for appellee.

O'NIELL, Chief Justice.

The plaintiffs are appealing from a judgment dismissing their suit on an exception to the jurisdiction of the court, ratione personæ. The defendant is a Louisiana corporation, having its domicile in the city of Monroe, in the parish of Ouachita. The corporation is a common carrier of passengers, by airplanes, traveling over the route between Charleston, S. C., and Dallas, Tex., and having a passenger station at the municipal airport in Shreveport, La. The plaintiffs are Mrs. Lorrain L. O'Brien and her minor son, Chris O'Brien, Jr., who was emancipated after the events which caused this lawsuit occurred. The suit is for damages alleged to have been suffered by Mrs. O'Brien, and for damages alleged to have been suffered by her son, as a result of the alleged refusal of the defendant to receive him as a passenger on one of the regular passenger planes of the corporation, at its station in Shreveport, on December 21, 1936, at midnight. The plaintiffs instituted the suit in Shreveport, instead of instituting it at the domicile of the defendant, on the theory that the alleged negligence on the part of the defendant, or failure of the defendant to perform an alleged obligation on its part, occurred in Shreveport, when the defendant refused to receive Chris O'Brien, Jr., as a passenger. Hence the plaintiffs contend that the venue, or parish in which the alleged events upon which the suit is founded took place, is the parish of Caddo; and they claim the right to prosecute the suit in that parish, under the ninth paragraph of article 165 of the Code of Practice, which provides that, in any case where a corporation does anything for which an action for damages lies, or fails to do anything for the failure to do which an action for damages lies, the corporation may be sued either in the parish where the damage is done or in the parish where the corporation has its domicile. The general rule, of course, as stated in article 162 of the Code of Practice, is that the only place in which a civil suit may be brought is in the parish in which the defendant is domiciled.

Inasmuch as no evidence was offered in support of the defendant's exception to

the jurisdiction of the court, in this case, the question of jurisdiction depends upon the allegations of the plaintiffs' petition. City of Lafayette v. Wells Fargo & Co. Express, 129 La. 323, 56 So. 257; Vicknair v. Daily States Publishing Co., 144 La. 809, 81 So. 324. The plaintiffs allege that, on December 18, 1936, Mrs. O'Brien, for herself and on behalf of her minor son, entered into an agreement with an authorized agent representing both the Delta Air Corporation and a connecting line, the American Air Lines, Inc., for the round-trip transportation of her son, Chris O'Brien, Jr., from Shreveport, La., to Los Angeles, Cal., and return— the initial trip to begin on the schedule leaving Shreveport at midnight on December 21, 1936, and arriving in Los Angeles at 7:40 the next morning, December 22. They aver that Mrs. O'Brien, at the time of making the contract, paid the agent of the two carriers $151.60, which was the regular round-trip fare and was the price agreed upon for the transportation; and that, in consideration therefor, the agent for the two carriers then and there guaranteed Mrs. O'-Brien that her son would be received as a passenger on the plane of the Delta Air Corporation, scheduled to leave Shreveport at midnight on December 21, and would be thereby transported to Dallas, Tex., where he would be transferred to a plane of the American Air Lines, scheduled to leave Dallas that night and to arrive in Los Angeles the next morning at 7:40. The plaintiffs allege that there was an agreement between the two common carriers, by which the ticket agents or station agents of either carrier had authority to sell through tickets, or through transportation, over the other carrier's line, to persons intending to travel on both of the connecting lines; and that the agent who sold the transportation to Mrs. O'Brien for her minor son had the authority to sell the transportation over both of the connecting lines, and to guarantee that the contract would be carried out. They aver that the contract was made in Los Angeles, where Mrs. O'Brien was spending the winter, while her son was at Centenary College, in Shreveport; and that she explained to the agent, before paying for the transportation, that it was important that she should be guaranteed that the contract would be carried out, so that her son would arrive in Los Angeles on the morning of December 22, 1936; and that the agent then and there, in the presence of Mrs. O'Brien, communicated with the appropriate department of the American Airlines, Inc., and had the reservation on the plane which was scheduled to leave Shreveport at midnight on the 21st of December confirmed and guaranteed. The plaintiffs aver that the agent for the two carriers then assured Mrs. O'Brien that a ticket for the transportation would be forwarded by the American Airlines to the station of the Delta Air Corporation, at the Municipal Airport at Shreveport, and that an agent of the Delta Air Corporation would notify Chris O'Brien, Jr., to call for the ticket at the airport in Shreveport. They aver that Mrs. O'Brien herself wired her son, informing him of the arrangement which she had made, and notifying him to call for the ticket at the airport in Shreveport; and that he did call for the ticket at 4 o'clock in the afternoon on December 21, 1936, and called also at the ticket office of

the Delta Air Corporation in a hotel in Shreveport, and was told by the agents of the corporation that they had no ticket or reservation for him on the plane due in Shreveport at midnight that night. The plaintiffs aver that Chris O'Brien, Jr., made several requests for his ticket between 4 and 9 o'clock that evening, and hence that the agents of the corporation had ample time and opportunity to communicate with the American Airlines, Inc., and to be assured of the arrangement which had been made for Chris O'Brien's reservation. The plaintiffs aver that Chris O'Brien, Jr., finally went to the airport at 11:45 that night, to board the plane, and that the agents of the Delta Air Corporation refused to admit him on the plane, saying that they had no ticket or reservation for him. The plaintiffs aver that young O'Brien was accompanied by twenty fellow students from Centenary College, who came to bid him bon voyage; and that the defendant's refusal to allow him to board the plane caused him great humiliation, disappointment, et cetera. The plaintiffs aver that Mrs. O'Brien was informed that night, about midnight or soon after midnight, that her son was not aboard the incoming plane of the American Airlines, and that she was thereby given great anxiety for the safety of her son, and became frantic and hysterical, and spent the remainder of the night in a high state of nervous suspense, et cetera. There is no occasion, however, at this time, to consider the nature or the elements of the damages claimed.

The principal reason given by the judge of the district court, for maintaining that the ninth paragraph of article 165 of the Code of Practice is not applicable to this case, is that, according to the allegations of the plaintiffs' petition, the damages claimed resulted not from a tort but from a tacit breach of contract; and that the breach consisted of the failure of the agent in Los Angeles to send the ticket to Shreveport, for delivery to Chris O'Brien, Jr.

In deciding the question of jurisdiction in this case it is a matter of no importance whether the suit is to be regarded as an action in tort or as an action for breach of contract—whether the damages claimed are considered as having resulted ex delicto or ex contractu. When the ninth paragraph of article 165 of the Code of Practice was adopted, originally, it was applicable only to suits against corporations, and only in cases where the cause of action was an act of commission, not where it was merely an *omission* to perform some obligation on the part of the corporation. That distinction was observed in many lawsuits against public carriers, in cases founded upon contracts of carriage, where it was sometimes doubtful whether the damages claimed should be regarded as having resulted ex contractu or ex delicto. We refer to the list of cases cited in Tripani v. Meraux, 184 La. 66, 71, 165 So. 453, 454, 455, and particularly the case of the Heirs of Gossin v. Williams and Morgan's La. & Tex. R. & S. Co., 36 La. Ann. 186, where it was held, before the ninth paragraph of article 165 of the Code of Practice was amended by Act No. 108 of 1908, that an action for damages resulting from the failure of the railroad company to take proper care of goods consigned to the carrier for shipment was an action for a

passive violation of a contract, and hence should have been brought at the domicile of the corporation. It was to abolish that distinction, between actions for damages resulting ex contractu and actions for damages resulting ex delicto, in suits against corporations, that the ninth paragraph of article 165 of the Code of Practice was amended, by Act No. 108 of 1908. The only change made was the addition of the words "or fail to do," after the word "do"—thus:

"Nine—In all cases where any corporation shall commit trespass or do *or fail to do* anything for which an action for damages lies it shall be liable to be sued in the parish where such damage is done or trespass committed." (We have italicized the words that were added by the act of 1908.)

In the case of City of Lafayette v. Wells Fargo & Co. Express, 129 La. 323, 56 So. 257, in 1911, it was said that the ninth paragraph of article 165 of the Code of Practice had been amended so as to be applicable to a suit for damages for a passive violation of a contract of carriage, on the part of a corporation doing business as a common carrier. It was said that this amendment was made by Act No. 44 of 1910, but the intention was to say that the amendment was made by Act No. 108 of 1908. Act No. 44 of 1910 had no reference to the ninth paragraph of article 165 of the Code of Practice, but merely added a new paragraph, No. 10, referring to suits on policies of insurance.

The statute remained applicable only to suits against corporations, and not to a suit against a partnership or an individual, until the statute was amended by Act No. 130 of 1926, so as to read thus:

"In all cases where any person, firm or corporation shall commit trespass, or do anything for which an action for damages lies or where any corporation shall fail to do anything for [the failure to do] which an action for damages lies, such person, firm or corporation may be sued in the parish where such damage is done or trespass committed or at the domicile of such person, firm or corporation."

It is to be observed that, even as amended by the act of 1926, the ninth paragraph of article 165 of the Code of Practice is not applicable to an action for damages against a person or firm, except in an action for trespass or for the commission of an act that causes injury to another. In the case of State ex rel. Morgan's La. & T. R. & S. S. Co. v. Judge, 33 La.Ann. 954, 955, and again in St. Julien v. Morgan's La. & Texas Railroad & S. S. Co., 39 La.Ann. 1063, 3 So. 280, it was held that the word "trespass" in the statute was used in its broad sense, so as to comprehend any wrongful act of force causing damage to another. But the statute, as amended, is applicable to an action for damages for passive negligence, or for a mere failure on the part of the defendant to perform an obligation, if the defendant is a corporation. The diction employed in the act of 1926—like that of the act of 1908—has left no doubt that an action for damages founded upon a contract of carriage, and brought against a corporation doing business as a common carrier, may be brought "in the parish where such damage is done." That means the parish in which the negligence, or the failure in the performance of a duty, occurred. It does not mean, necessarily, the parish in which the party injured actually

was at the time when he was injured. In Vicknair v. Daily States Publishing Co., 144 La. 809, 81 So. 324, it was held that a suit for damages for an alleged libel might be brought in the parish where the newspaper containing the libelous matter was circulated, although the defendant was domiciled elsewhere. The whereabouts of the person injured by the libel, at the time when she was injured, was a matter of no importance. By the same token, the fact that Mrs. O'Brien was not in Shreveport, or in Caddo parish, but was in Los Angeles, Cal., at the time when the alleged negligence, or breach of duty, occurred in Shreveport, does not deprive her of the right to prosecute her suit in Shreveport, under the ninth paragraph of article 165 of the Code of Practice.

The judge of the district court, in his written opinion in this case, held that, according to the allegations of the plaintiffs' petition, the breach of contract occurred when the defendant's agent in Los Angeles neglected to forward the ticket to Shreveport. In the brief of the attorney for the plaintiffs it is said that the negligence of the agent of the defendant in that respect was the direct cause of the damages. Hence it is argued by the attorneys for the defendant that the negligence occurred in Los Angeles, and at a time when Chris O'Brien, Jr., was not a passenger, or entitled to the rights of a passenger, in the care of the defendant. It is not alleged in the plaintiffs' petition that the negligence of the defendant's agent, in failing to send the ticket to Shreveport, was the direct cause of the injury. It is not conceded by the plaintiffs

that any such negligence on the part of the defendant's agent in Los Angeles was the only cause of the alleged injury. On the contrary, it is argued for the plaintiffs that the ticket, which the agent in Los Angeles said would be sent to Shreveport, was not the contract of carriage, but was only the evidence of the contract, which could have been carried out by the defendant, notwithstanding the failure of its agent to forward the ticket to Shreveport. The place where the defendant was to carry out the contract —or was to begin the carrying out of the contract—was at the defendant's station, in Shreveport. The plaintiff in a case like this is not supposed to know who, among the defendant's agents, was responsible, or who among them was most directly responsible, for the failure of the defendant to fulfill its obligation. In the case of Baltimore & Ohio Railroad Co. v. Thornton, 188 F. 868, decided by the United States Circuit Court of Appeals for the Fourth Circuit, in 1911, Mrs. Thornton was put off of the defendant's train, by the conductor, before she had reached her destination, because the station agent who sold her the ticket failed to punch the place of her destination. She sued for damages, and the defendant contended that the conductor did nothing more than his duty in compelling Mrs. Thornton to get off of the train when he observed that her ticket did not oblige him to carry her to the city to which she said she had paid her fare. But the court held that, even though the conductor did nothing more than his obligation to his employer demanded of him under the circumstances, his action constituted a tort on the part of the defendant, as far as the plaintiff was

concerned. By the same token the refusal of the defendant's agents in Shreveport, in this case, to receive Chris O'Brien, Jr., as a passenger, constituted negligence on the part of the defendant, as far as the plaintiffs are concerned—notwithstanding O'Brien had no ticket—if in fact his mother paid for the ticket and the defendant's agent in Los Angeles failed to carry out his promise to forward the ticket to Shreveport.

The judgment appealed from is annulled, the defendant's exception to the jurisdiction of the court is overruled, and the case is ordered remanded for further proceedings. The costs of the trial of the exception to the jurisdiction, including the costs of this appeal, are to be borne by the defendant. All other court costs are to abide the final disposition of the case.

FOURNET, J., concurs.

HIGGINS, J., absent.