GLADNEY, Judge.
The plaintiff, Interim Television Corporation, instituted this suit in Caddo Parish to recover money allegedly due by L. K. Cappel and Interstate Electric Company of New Orleans under specific terms of a. written contract which contemplated the-exhibition of certain telecasts as advertising media. The agreement, which was-signed by Cappel, purportedly acting in-behalf of Interstate, scheduled twenty-six. telecasts at a stipulated rate of $147.50’ each. The contract was terminated after-fifteen of the television programs were exhibited, at which time Interstate denied' liability and advised plaintiff that Cappel' had exceeded his authority in the execution-of the contract. Exceptions were filed by each of the defendants and sustained by the court a quo, from which judgment plaintiff has appealed.
Appellant assigns error to the judgment: first, in sustaining an exception of no cause or right of action filed by Cappel; and second, in maintaining an exception filed by Interstate to the jurisdiction of the First Judicial District Court of Caddo Parish.
• The exception filed on behalf of Cappel relates only to whether vel non a *541 cause of action has been stated by plaintiff. The issue must be resolved solely upon the well pleaded facts declared in plaintiff’s pleadings, wherein Cappel is sought to be held responsible under the contract with his employer, Interstate Electric Company of New Orleans. Therefore, in this instance if such allegations of fact set forth a cause or right of action as to any part of plaintiff’s demand, the exception could not be maintained. Smith v. Kennon, 1937, 188 La. 101, 175 So. 763; Adkins’ Heirs v. Crawford, Jenkins & Booth, Inc., 1942, 200 La. 561, 8 So.2d 539; Ingersoll Corporation v. Rogers, 1950, 217 La. 79, 46 So. 2d 45; C. W. Greeson Company v. Harnischfeger Corporation, 1951, 219 La. 1006, 54 So.2d 528; Schackai v. Messa, 1953, 223 La. 626, 66 So.2d 573. In Rapides Grocery Company v. Vann, 1956, 230 La. 829, 89 So.2d 359, it was pointed out that the tendency of modern practice is to yield as little as possible to technicalities and to be more liberal in upholding substantive rights.
The petition sets forth: that about July 1, 1954, Charles E. Sullivan, manager of the Intrasouth Distributing (identified therein as a trade name used by Interstate for its Shreveport branch) commenced negotiations with a representative of plaintiff for the purpose of determining upon a contract for television advertising of certain products sold by the defendant; that before a definite agreement was reached Sullivan was moved to New Orleans and was replaced by Marshall S. Pemberton as manager of the Shreveport office; and that Pemberton was instructed by Sullivan to continue the negotiations. It is further alleged that L. K. Cappel, who occupied the position of territory manager, and who was experienced in advertising, was designated by Pemberton to peruse the contemplated contract and execute the contract if satisfactory. Paragraph numbered 12 of the petition alleges:
“That based upon this information and assurance from Marshall S. Pem-berton, manager of Intrasouth Distributing, and based upon the delegated authority to L. K. Cappel, territory manager for Intrasouth Distributing, and by having exercised reasonable precautions in inquiring about and verifying authority to enter into said contract, and being in good faith, your petitioner accepted the signature of L. K. Cap-pel to be binding upon Intrasouth Distributing.”
Plaintiff amended its original petition by adding an additional paragraph thereto, designated as 12(A), reading as follows:
“That based upon this information and belief, and on such information and belief, that L. K. Cappel had authority to act in behalf of principal, the signature of L. K. Cappel was deemed as creating a contract between Intrasouth Distributing and your petitioner.”
Thereafter a second supplemental and amended petition was filed to the end that plaintiff’s petition would include the following paragraph:
“That, in the alternative, and solely in the alternative, petitioner avers solely upon the information and belief founded upon correspondence with Interstate Electric, that said L. K. Cappel' had no authority to sign the contract herein on its behalf, nor was he authorized to bind them in any way verbally or in writing, and that, should the Court hold that L. K. Cappel was not vested with proper mandate authority as alternatively alleged in the article, said L. K. Cappel is therefore personally liable to petitioner for damages under the contract in the amount of $1,650.00.”
The exception of no cause of action is predicated upon four grounds: that the petition alleges and discloses the contract was executed by Cappel solely as the agent of the defendant and plaintiff had no intention of contracting with Cappel personally or individually; that the petition *542 fails to allege any personal guarantee by L. K. Cappel with respect to the contract; that the petition clearly indicates plaintiff was fully informed of the authority of Cappel to act as agent of the defendant; and, finally, that the petition does not show that exceptor exceeded his authority in executing the contract that is sued upon.
The legal issue thus presented relating to the liability of an attorney for his acts arises under Title IS of the LSA-Civil Code of Louisiana, dealing with the subject of mandate. The following Codal articles deserve our attention:
No. 3010:
“The attorney can not go beyond the limits of his procuration; whatever he does exceeding his power is null and void with regard to the principal, unless ratified by the latter, and the attorney is alone bound by it in his individual capacity.”
=* * * * * *
No. 3012:
“The mandatary, who has communicated his authority to a person with whom he contracts in that capacity, is not answerable to the latter for anything done beyond it, unless he has •entered into a personal guarantee.”
No. 3013:
“The mandatary is responsible to those with whom he contracts, only when he has bound himself personally, •or when he has exceeded his authority without having exhibited his powers.”
Plaintiff’s petition nowhere alleges that Cappel personally bound himself for payment of the obligation. The contract attached as part of the original petition plainly discloses it was entered into between “Intrasouth Distributing” called “agency” and “accepted for Agency by L. K. Cappel.” Although the petition, in the alternative, avers Cappel had no authority to act, that bare allegation does not state legal liability or meet the requirement of LSA-Civil Code Article 3013, for it does not charge the attorney exceeded his authority “without having exhibited his powers.” Further we note that it is alleged plaintiff investigated the powers of Cappel of its own accord and determined Cappel was vested with authority, and consequently acted upon such information.
Therefore, by reason of the allegations of the petition it appears that the Codal articles above quoted are conclusive of the issue and it is our holding that there is no error in the judgment sustaining the exception of no cause or right of action.
In seeking a reversal of that portion of the judgment which sustained a plea to the jurisdiction of the trial court, plaintiff principally contends that its action falls within the purview of Article 165, subd. 9, of the Code of Practice, which article provides for certain exceptions to the rule established in Article 162 of the Code of Practice. The provision recites that in civil matters suit should be brought at the domicile of the defendant.
Another statutory ground relied upon by appellant for showing the venue of the suit lies with the district court in Caddo Parish is LSA — R.S. 13:3234, which statute expressly permits in certain instances, suit to be filed in the parish where the agent for service of process has his residence, or in some other parish where the corporation had and maintained an office. Examination of the provision, however, discloses this section of the LSA-Revised Statutes of 1950 was based on Acts 1918, No. 179, Par. 1 (6d) and is limited to the subject of venue of suits against foreign corporations only. Perkins v. Brothers of Christian Schools of Lafayette, Inc., La. App., 1954, 71 So.2d 400. See also LSA-R.S. 12:37.
In the instant case Interstate Electric Company of New Orleans, Louisiana, defendant herein, maintains its principal *543 place of business and is domiciled in the City of New Orleans. The transaction giving rise to the instant suit, however, arose more or less entirely in the Parish of Caddo, and involved dealings between the branch of the defendant company maintained in Shreveport and the plaintiff, whose business was operated at Shreveport. Tendered in support of the plea to the jurisdiction is a certificate by the Secretary of State, confirming the averment of the plea as to domicile of the defendant company and certifying that none of its designated agents for service or process reside within Caddo Parish.
It is well to note at this time that by an amended petition plaintiff has incorporated into its petition an allegation to the effect that the defendant has breached the contract entered into by L. K. Cappel, its former territory manager, and as a result of such breach, damages have been incurred by the plaintiff.
Code of Practice, Article 165, subd. 9, provides:
“Trespass. In all cases where any person, firm or domestic or foreign corporation shall commit trespass, or do anything for which an action for damages lies or where any domestic or foreign corporation shall fail to do anything for which an action for damages lies, such person, firm or corporation may be sued in the parish where such damage is done or trespass committed, or at the domicil of such a person, firm or corporation.”
This codal provision, prior to Act 108 of 1908, read:
“In all cases where any corporation shall commit trespass, or do anything for which an action for damages lies, it shall be liable to be sued in the parish where such damage is done, or trespass committed.”
Subsequently, by Act 108 of 1908, the provision was amended to embrace cases where any corporation should fail to do anything for which an action for damages lay. By Act 130 of 1926 the statute was made applicable to persons and firms who committed a trespass or acts of commission for which an action for damage lay. In 1940 the Legislature clarified the word “corporation” by inserting therein the words: “domestic” or “foreign” so the exception would have application to both domestic and foreign corporations. As so amended the provisions of Code of Practice, Article 165, subd. 9, remain to this date.
The scope of Code of Practice Article 165, subd. 9, was held to extend with force to actions for damages arising from a breach of contract in City of Lafayette v. Wells Fargo & Company Express, 1911, 129 La. 323, 56 So. 257; O’Brien v. Delta Air Corporation, 1938, 188 La. 911, 178 So. 489, and in Du Bell v. Union Central Life Insurance Company, 1947, 211 La. 167, 29 So.2d 709. In Weber v. H. G. Hill Stores, Inc., 1945, 207 La. 500, 21 So.2d 510 and in Perkins v. Brothers of Christian Schools of Lafayette, Inc. it was held the exception provided by Code of Practice, Article 165, subd. 9, was without application and venue was at the domicile of the corporation sued. In the City of Lafayette v. Wells Fargo & Company Express and in O’Brien v. Delta Air Corporation the causes of action sued upon arose from alleged negligent acts in violation of an obligation imposed by the contract, and gave rise to a claim in damages, the amount of which required judicial determination. Du Bell v. Union Central Life Insurance Company was occasioned by the failure of the defendant to deliver certain property to its buyer who claimed damages arising as an incident to the non-performance of the defendant’s obligation. In Weber v. H. G. Hill Stores, Inc. and Perkins v. Brothers of Christian Schools of Lafayette, Inc. the demands of each of the plaintiffs were confined to stipulated sums (referred to as rent) in the alleged contracts and were for the non *544 payment of a sum of money as determined by the contract itself.
The aforementioned jurisprudence points up the question: Does Code of Practice Article 165, subd. 9, apply to actions against a corporation for the non-payment of-money stipulated in a contract? The Code provision, insofar as corporations are concerned, permits suit in the parish where the damage is done, or trespass committed, or at defendant’s domicile where (1) the corporation shall commit trespass, (2) or do anything for which an action for damages lies, or (3) shall fail to do anything for which an action for damage lies. It seems clear that the obligations so embraced, other than not to commit trespass, are those which give rise to damages from breach of an obligation to do or not to do. The question then arises: Does the Statutory provision apply to actions where the duty imposed by the contract is simply the payment of a sum of money as prescribed therein ?
Chapter 3, entitled “Of the Effect of Obligations” of the LSA-Civil Code of Louisiana divides obligations into the obligations of giving and the obligations to do or not to do. It is thus provided:
Art. 1905:
“The term to give, in this division of obligations, is applied only to corporeal objects, that may be actually delivered from one to another; and it includes the payment of money as well as the delivery of any other article. A covenant, respecting an incorporeal right comes under the definition of contracts to do or not to do, because some act, besides that of delivery, is necessary for the transfer of such rights.”
Art. 1926:
“On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section.”
Art. 1903:
“The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect.”
Art. 1930:
“The obligations of contract (contracts) extending to whatsoever is incident to such contracts, the party who violates them, is liable as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default.”
Art. 1934:
“Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions * *
Art. 1935:
“The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more.”
The foregoing principles seem to us to create a division between the obligation of giving (which includes the payment of money and concerns corporeal rights) and the obligation to do or not to do (which deals entirely with incorporeal rights). In the case of obligations to do or not to do, the obligation extends under *545 LSA-Civil Code, Article 1903 to everything incidental to the particular contract, or necessary to carry it into effect. Claims for damages for a breach of contract thus arise from the rights incidental to the particular contract and are incorporeal. The wording of Code of Practice, Article 165, subd. 9, therefore, has reference to actions for damage which flow from the invasion of incorporeal rights. We are of the opinion the Code of Practice, Article 165, subd. 9, is limited in its application to the enforcement of obligations to do or not to do and does not extend to an obligation to pay money under specific terms of a contract.
The conclusion reached impels us to find that demands of the plaintiff against Interstate Electric Company of New Orleans is for the enforcement of an obligation to pay money and does not fall within the obligations to do or not to do, which we think are contemplated in Code of Practice, Article 165, subd. 9. The exception to the venue was properly maintained.
The judgment from which appealed is, therefore, affirmed at appellant’s cost.