No. 2794

Second Circuit

## M. KAPLAN & SON v. LOUISIANA PULP AND PAPER COMPANY

(December 11, 1926. Opinion and Decree.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Appeal—Par. 625.**

Findings of the trial court on the questions of fact, unless manifestly erroneous, are affirmed.

2. **Louisiana Digest—Bills and Notes—Par. 223, 226.**

The indorsement on a check and voucher attached "Payee by endorsement acknowledges receipt in full of account as shown within. If not correct, return without alteration," does not preclude the admission of parol evidence to vary or contradict it.

Appeal from the Fourth Judicial District Court of Louisiana, parish of Morehouse. Hon. Percy Sandel, Judge.

Action by M. Kaplan & Son against Louisiana Pulp and Paper Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Hudson, Potts, Bernstein & Sholars, of Monroe, attorneys for plaintiff, appellee.

Madison & Madison, of Bastrop, attorneys for defendant, appellant.

ODOM, J.   Plaintiff sued defendant to recover $657.00, balance due on a car of scrap iron, and $72.27, freight charges on the car.

There was judgment for plaintiff as prayed for and defendant has appealed.

OPINION.

Only questions of fact are involved in this suit.

Plaintiff is a junk dealer in the city of Monroe and handles scrap iron.

The defendant, at the time of the transaction out of which this suit arises, was erecting a pulp and paper mill at Bastrop and needed a lot of iron to reinforce concrete footing and foundations of its structures.

The defendant, through its general agent and officer, called the plaintiff over the telephone and inquired if they had on hand iron suitable for reinforcing purposes and was told that they did, whereupon defendant ordered, over the telephone, one carload of such iron at an agreed price of 2 cents per pound.

This 'phone order was later confirmed by defendant by written statement on a printed form used by it reading in full as follows:

"LOUISIANA PULP AND PAPER CO.
No. 30
"PURCHASE ORDER
"Bastrop, La., 4/30/24.
'To M. Kaplan & Son:
"Address         Monroe, La.
   "Please enter order for the following material, and ship by M. O. P. Freight.

QUANTITY                    MATERIAL

1     Minimum Car Scrap Iron @ .02c Confirming order given you over the telephone by Mr. Cullen.

Note: Render all invoices in duplicate. Acknowledge and advise when shipment will be made.
   Please show our Order No. on your invoice.
            LOUISIANA PULP & PAPER CO.
                    By W. H. Hinton."

Following the receipt of this letter of confirmation of the order, plaintiff shipped to defendant 65,700 pounds of iron.

After the receipt of the car of iron, the defendant remitted to plaintiff by voucher check the sum of $657.00, this being 1 cent per pound for the iron instead of 2 cents as had been agreed upon, but deducted the amount of $72.27 for freight paid.

It is not disputed that the original agreement was that defendant should pay 2 cents per pound for the iron.

But defendant contends that upon receipt of the car the iron was inspected and found unsatisfactory in that it was warped, twisted and bent, was junk and pitted with rust, and that immediately plaintiff was called over the telephone and informed that the iron was not as represented and was refused.

Whereupon, defendant contends, David Kaplan, representing the plaintiff firm,

instructed defendant to use the iron and pay what it was worth.

Mr. Cullen, general manager of the defendant corporation, testified that he figured the iron was worth only 1 cent per pound and that remittance was made accordingly. The remittance covered not only this shipment but an amount due for other purchases made by defendant from plaintiff.

The check was accepted by plaintiff, but immediately they wrote defendant calling its attention to what Mr. Kaplan says he supposed was a clerical error of the bookkeeper in calculating the price of the iron at 1 cent per pound when it should have been 2 cents.

This whole controversy has arisen over a dispute between Mr. Cullen, manager of the defendant company, and David Kaplan, representing the plaintiff, as to what was said and agreed upon in the conversation over the telephone which took place after the iron reached Bastrop and was inspected.

Cullen says that Kaplan agreed that the defendant keep and use the iron and pay what it was worth.

Kaplan says that he made no such agreement, and that the only complaint that Cullen made to him was that more iron had been shipped than he expected; that he had ordered only a minimum car and that a full car or heavy carload had been shipped; and Kaplan says that he told Cullen that if more iron had been shipped than could be used plaintiff would give defendant credit for the overplus.

We have no reason to challenge the veracity of either Mr. Cullen or Mr. Kaplan, and as the testimony was taken out of court we have not the benefit of the lower court's conclusion as to the weight of the evidence.

In reaching our conclusion, therefore, we are guided by what we think is the reasonable view of what was probably said and understood between the parties.

We have no idea that Mr. Cullen would intentionally misrepresent any fact before the court, but, considering all the circumstances, we think he is mistaken.

He is a man of large affairs. At the time, he was building an enormous manufacturing plant and was supervising the expenditure of millions of dollars. He personally purchased all the material for the construction of that plant, and it does not seem to us probable that he could recall the minute details of each and every purchase of material.

He does not recall that anything was said in the telephone conversation about the weight of the car of iron, but in view of Kaplan's testimony that Cullen did mention that and the fact that the letter confirming the order specified "minimum" car, we think it very likely that Mr. Cullen is mistaken.

We note also that Mr. Cullen testified that he figured that the iron was actually worth only 89 cents per 100 pounds. Yet he paid for it at $1.00 per 100 pounds. If Kaplan had agreed that defendant should use the iron and pay for it what it was worth and had agreed that Mr. Cullen should be the judge as to its value, as Cullen says he did, it is not likely that Cullen would have paid more than 89 cents per 100 pounds.

Again, there is no doubt but that defendant was to pay the freight; that was conceded on the trial of the case, and yet

when the remittance was made the freight charge was deducted.

All this indicates that Mr. Cullen in some way got confused over the transaction.

From Kaplan's standpoint it does not seem reasonable that he would have agreed that defendant keep and use the iron and fix its own value thereon, thereby placing the plaintiff entirely in the hands of the defendant.

If the iron had been rejected outright, Kaplan no doubt would have gone to Bastrop, which is only a short distance from Monroe, to settle the controversy, or he could have had the car returned to Monroe, as he did on another occasion when a dispute between the same parties arose.

From all the testimony and the circumstances we cannot say that the original agreement was abrogated and a new contract made.

Counsel for defendant argue in brief (the case was not argued orally) that the iron was not up to specifications, and that if the court should hold that the original contract was not set aside and a new one made, the defendant is entitled to a reduction in price under plaintiff's warranty.

The testimony is conflicting as to the condition of the iron. It was not worth as much as new iron, of course, which could have been purchased at $2.60 per 100 pounds. But defendant did not expect and had no right to expect iron as good as new. Plaintiff is a junk dealer, and defendant knew it. The letter confirming the order specifies "1 minimum car scrap iron @ .02c". Some of the iron shipped was bent and rusty. That was to be ex-

pected. "Scrap iron" is waste or refuse iron which has been in actual use.

See volume 7, Words and Phrases, 1st ed. page 6358.

While the iron was not, of course, as good as new, the testimony convinces us that it was as good as the defendant had a right to expect. . .

The check sent plaintiff has attached to it a voucher on which is printed the following:

"Payee by endorsement acknowledges receipt in full of account as shown within. If not correct, return without alteration."

"The mere fact that a receipt expresses on its face that it is in full of all demands or of certain demands, does not make the instrument of such contractural nature as to preclude the admission of parol evidence to vary its effect." .

17 Cyc. 634.

Gray vs. Lonsdale, 10 La. Ann. 749.

Porter vs. Brown, 21 La. Ann. 532.

Succession of Croizet, 12 La. Ann. 401.

Bass vs. Balph, 5 La. Ann. 235.

Bringier vs. Gordon, 14 La. Ann. 274.

Beatty vs. Tete, 9 La. Ann. 129.

Kaplan testified that he did not by this endorsement intend to release defendant from further payment, and this is shown by the fact that he immediately wrote defendant demanding the balance which he claimed was due.

We cannot say that the judge of the lower court manifestly erred in his judgment.