REGAN, Judge.
Plaintiff, Charles Jacques, Jr., instituted this suit against the defendant, City Parking Service, Inc., a compensated depositary endeavoring to recover the sum of $398.90, representing the cost of repairing the damage incurred by plaintiff’s automobile, resulting from the theft thereof on March 2, 1951, between the hours of 7:00 A.M. and 6:00 P.M., from the parking lot of the defendant located at Perdido and Saratoga Streets. Plaintiff asserts that the sole and proximate cause of the theft was the negligence of the defendant in failing to employ diligent and sufficient custodians to preserve the deposit, especially since the ignition keys were permitted to remain in the vehicle at the request of the defendant for the convenience of its employees.
The defendant pleaded various exceptions which were ultimately overruled and then answered admitting that it operated a parking lot on March 2, 1951 at the aforementioned location, six days each week, between the hours of 7:00 A.M. and 6:00 P.M.; that the cars parked therein were in the custody of competent personnel and if any loss was incurred by the plaintiff resulting from the theft of the automobile, it was not through the fault of defendant or its employees; and finally, defendant insisted that it is not responsible for damages resulting from the theft of the automobile after 6:00 P.M., as is evidenced by conspicuous signs posted at the parking lot, together with the fact that every customer is orally informed by defendant or his employees of this limitation of liability.
From a judgment in favor of plaintiff as prayed for, defendant has prosecuted this appeal.
The record reveals that the parking lot measures approximately 100 by 200 feet, and is generally serviced by one entrance and one exit. However, a third passageway to the lot existed on Gravier Street, which the defendant’s employees stated was usually obstructed by a vehicle, the ignition of which was always locked. It was owned by William B. Coleman, and operated by two employees, namely, Pete Morse, as manager, and Johnny Lambert, seventeen years of age, as “car hop”. The call of nature occasionally necessitated their individual absence from the lot. The area accommodated approximately 300 cars each day.
On March 2, 1951 at 9:00 A.M., plaintiff parked his automobile in defendant’s lot at Perdido and Saratoga Streets in the City of New Orleans. He paid the established fee of twenty-five cents, and received the usual identification tag or receipt therefor. In conformity with the request of the attendant, he left the keys in the ignition switch. Sometime between 5 :30 P.M. and 6:00 P.M., on the same day, plaintiff’s fiancee, now his wife, having prearranged a time and place to meet the plaintiff, walked from her office to defendant’s lot and looked for plaintiff and his automobile. After making, what she emphasized was, a thorough search, without requesting the aid or assistance of defendant’s employees, she concluded that the vehicle was not on the lot and that some emergency had arisen which caused plaintiff to call for his car and leave the area earlier than usual. It *80 appears that neither of her assumptions was correct, but that the plaintiff, an accountant, was compelled to work late that night and consequently arrived at the parking lot between 12:00 Midnight and 1:00 A.M., at which time he discovered that his automobile was missing and immediately notified the New Orleans Police Department as is reflected by their written report dated March 3, 1951. Plaintiff likewise reported the theft to the parking lot manager on March 3rd, and this information was conveyed by him to the owner. The vehicle was subsequently recovered by the police, and the litigants have agreed that it was damaged to the extent of $398.90.
Plaintiff conceded on the trial hereof that he knew that the parking lot closed at 6:00 P.M., and that he was familiar with the custom of the manager thereof to conceal the keys of the car under the floor mat or behind the visor when the car was permitted to remain in the lot after the closing thereof.
Plaintiff, as we understand his position, contends that since he proved that he parked the vehicle with the defendant at 9:00 A.M., on March 2, 1951, and that the vehicle was subsequently stolen, the burden of proof then shifted to the defendant to establish, in conformity with the rationale and jurisprudence emanating from LSA-C.C. Article 2937, that the depositary used “the same diligence in preserving the deposit that he uses in preserving his own property”, until the expiration of the contract of deposit, that is, that the vehicle had been faithfully preserved, at least until 6:00 P.M. of March 2, 1951.
Defendant, on the other hand, insists that since the plaintiff did not demand delivery of the vehicle before closing time, nor did anyone possessing his authority do so, the theft, if any, occurred after 6:00 P.M., when the lot was closed; a fortiori, defendant is not liable for the damage incurred by the vehicle since the contract of deposit had expired and the obligation of defendant, as the depositary, by virtue of LSA-C.C. Article 2937 had, simultaneously, ceased to exist. Defendant points out that the rationale which supports the absolution of the owner of a parking lot, after it is closed, is predicated on plaintiff’s knowledge of the custom of concealing the ignition keys to the vehicle under the floor mat or behind the visor which per se constitutes constructive delivery thereof to the owner, and a limitation of liability by special contract.[1]
The initial question posed for our consideration is whether, after plaintiff has proven that he deposited the vehicle with the custodian within the limited period of the deposit,[2] the burden of proof then shifted to the defendant to establish that he faithfully preserved the vehicle until the contract of deposit expired and that the loss resulted through no fault on his part.
Under the jurisprudence of Louisiana, the operator of a parking lot has been termed a compensated depositary, or, employing the use of common law terminology as the courts have frequently done, a compensated bailment.[3]
The responsibility of a depositary is that of an ordinary prudent man using “the same diligence in preserving the deposit that he uses in preserving his own property.[4] ”
*81 The contract between plaintiff and defendant was a limited obligation as to the time of performance.[5]
Defendant, for a consideration, undertook the safe-keepink of automobiles, particularly the plaintiff’s between the hours enumerated, which we believe was thoroughly understood by the parties to the transaction to be from 7:00 A.M. to 6:00 P.M. After 6:00 P.M., the obligation of the defendant as a compensated depositary ceased because of the nature of the contract.
However, we are convinced that when the plaintiff proved that he parked his vehicle with the defendant during the prescribed hours of the operation of the parking lot, and that the vehicle was subsequently stolen therefrom, the plaintiff then raised the presumption that the failure to deliver the vehicle resulted from the negligence of the defendant, and the burden of proof then shifted to the defendant to prove that it properly performed the obligation which it had assumed until 6:00 P.M.,[6] and that the theft had not occurred through defendant’s fault up to the moment the contract of deposit expired.[7]
The defendant failed to carry the burden of proof which had been placed upon it; on the contrary, Pete Morse, the manager of defendant’s parking lot, very honestly testified that, when he closed the lot at 6:00 P.M., he did not know if plaintiff’s car was still safely parked therein. In view of this convincing testimony, we must conclude that the theft of plaintiff’s vehicle occurred at some time between the hours of 9:00 A.M., when the vehicle was parked, and 6:00 P.M., when the lot closed. While we do not believe that this evidential conclusion needs substantiation, it is to some extent confirmed by the testimony of plaintiff’s fiancee, who asserted that on March 2, 1951, at about 5:30 P.M., she made a thorough search of the parking lot without requesting the aid of defendant’s employees and was unable to find plaintiff’s vehicle.[8]
The trial judge, in deciding that defendant was negligent during the limited period of the contract of deposit, stated:
“It is the opinion of the court from the testimony adduced that the automobile was stolen from the lot prior to its closing hour at six p. m., and that the defendant was negligent in not having sufficient capable personnel to guard the property of the bailor.”
We find no reversible error in the factual or legal result reached by the trial judge. This parking lot encompassed an area of approximately 100 by 200 feet, with one entrance and one exit, and a possible third passageway, serviced by two attendants, one of whom was only 17 years of age, to care for approximately 300 vehicles which entered and exited from the parking area, and we are convinced that the theft of plaintiff’s car could not have occurred had defendant and his employees properly performed their duty. Indeed, it seems to us that such a conclusion is well-nigh irresistible because some one must have taken plaintiff’s car between 9:00 A.M. and 6:00 P. M., without presenting an identification ticket[9] therefor and to permit this was clearly negligent.
*82 Defendant’s counsel m oral argument before this court asserted that the parking fee is small in proportion to the responsibility assumed and that this fact should be taken into consideration in the rendition of our judgment. Although the fee received for such service is comparatively small in proportion to the responsibility assumed by the depositary, nevertheless, the courts will not undertake to determine the adequacy of the consideration charged. Marine Ins. Co., Ltd., of London, England v. Rehm, La.App.1937, 177 So. 79; Doherty v. Ernst, 1933, 284 Mass. 341, 187 N.E. 620.
For reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Continental Insurance Co. v. Humbert, La.App.1948, 37 So.2d 605.

. 7 ;00 A.M. to 6:00 P.M. Plaintiff actually parked Ms veliicle at 9:00 A.M.

. Munson v. Blaise, La.App.1943, 12 So.2d 623; Hartford Fire Insurance Co. v. Doll, 1926, 5 La.App. 226; Levy v. Kirwin, 1927, 6 La.App. 93; Meine v. Mossier Auto Exchange, Inc., 1929, 10 La.App. 65, 120 So. 533; LSA-C.C. Articles 2937 and 2938.

. Kaiser v. Poche, La.App.1940, 194 So. 464; LSA-C.C. Art. 2937.

. LSA-C.C. Articles 1996 and 2048.

. Fidelity & Deposit Co. of Maryland v. Rednour, La.App.1950, 44 So.2d 215; M. Kaplan & Son v. Louisiana Pulp & Paper Co., 1926, 5 La.App. 229; Scott v. Sample, 1921, 148 La. 627, 87 So. 478; 12 T.L.R. 458.

. Hartford Fire Insurance Co. v. Doll, supra.

. We have not overlooked the inherent weakness of this type of testimony, however, the result which we have reached is not predicated thereon.

.It was pointed out during the trial hereof in the lower court that the plaintiff was unable to produce the identification ticket having lost it prior to the trial, but we attach no especial significance to this fact since the defendant did not prove that he surrendered the vehicle to the possessor of the identification ticket.