98 So.2d 835 (1957)
OLINDE HARDWARE & SUPPLY CO., Inc., Plaintiff-Appellee,
v.
John H. RAMSEY, Defendant-Appellant.
No. 4501.
Court of Appeal of Louisiana, First Circuit.
November 19, 1957.
Rehearing Denied December 23, 1957.
*837 Major & Ponder, Baton Rouge, for appellant.
Sanders, Miller, Downing, Rubin & Kean, Roy M. Lilly, Jr., Baton Rouge, for appellee.
TATE, Judge.
This is a suit on an open account. Defendant answered, admitting the purchases, but reconvening for judgment for the excess over the account sued upon of the value of an air conditioner he had bought from plaintiff and paid for but had never received.
Defendant appeals from adverse judgment. We are presented solely with a question of law, since both parties stipulated that the facts shown in the trial court's reasons for judgment correctly reflect the evidence educed at the trial.
On February 7, 1951, defendant Ramsey bought two particular air conditioners from plaintiff store for a total consideration of $1,037.21 and paid for them on March 21, 1951. The equipment was to be retained by defendant store until Ramsey sent for them, Ramsey being about to build a new home. Ramsey purchased and paid for the equipment, although not intending to use it immediately, because it was sold at a bargain price.
Yoder, plaintiff's employee who confected the transaction with Ramsey, left plaintiff's service about two weeks after the sale was made. He recalled the transaction and that it was understood that defendant was not to take delivery of the air conditioners at the time of the sale. None of plaintiff's present employees have any knowledge of the sale, although defendant's invoice and bills from plaintiff reflect the purchase of the air conditioners "to be delivered" and the payment therefor.
Construction of Ramsey's new home was greatly delayed. In September of 1951 he obtained delivery of the smaller unit for installation in his old home.
*838 No further steps were taken by Ramsey until early in 1954, when noticing that plaintiff was holding a warehouse sale, he contacted plaintiff's present manager and employees about the remaining air conditioning unit he had paid for and left with plaintiff store. These employees did not have any knowledge of same, nor could it be located. These employees corroborate that they had several conferences about the lost machine.
In April or June of 1955 the defendant bought the appliances in the amount of $590.94 for which the present suit is instituted. He apparently thought that he was entitled to credit for the lost air-conditioning unit (the price of which had been $550 plus 3% sales tax, or $566.50), but the District Court specifically found that there was no agreement to this effect.
This suit was filed November 20, 1956, and by reconventional demand filed December 17, 1956, Ramsey asserted his claim for the undelivered air conditioner since plaintiff store "has never allowed any such credit for this merchandise which [it] still has in [its] possession or has misplaced, lost or sold to some other person." Alleging that the replacement cost of the undelivered merchandise was $772, Ramsey prayed for judgment for the excess thereof over the amount plaintiff store had sued for.
The District Court specifically found that Ramsey had never received the air conditioner he had paid for, and also that the store had absolutely no knowledge what had happened to it. The District Court found that the legal relationship of depositor and depositary had been created by plaintiff's agreement to retain the goods by defendant until he called for them, specifically citing LSA-Civil Code, Article 2930:
"The deposit is perfected only by the delivery, real or fictitious, of the thing deposited. The fictitious delivery is sufficient, when the depositary is already possessed, in some other right, of the thing agreed to be left in deposit with him."
The District Court concluded:
"Considering the evidence here in the light most favorable to defendant, it shows, in my opinion, that plaintiff wrongfully took and appropriated the air conditioner to its own use. This does not appear to have been done willfully or fraudulently, but through error and negligence. This gave defendant an action for damages as for a tort or a quasi offense, and the prescription of one year applies to and began to run from the date of the injury. LSA-Civil Code, Articles 3536, 3537; Carter-Allen Jewelry Co. v. Overstreet, 165 La. 887, 116 So. 222. When the injury here actually occurred we do not know, but the defendant had knowledge of it in January or February 1954, and the prescription of one year began to run at that time. McGuire v. Monroe Scrap Material Co., 189 La. 573, 180 So. 413." (Italics ours.)
The chief legal issue before this Court is whether defendant Ramsey's demand in reconvention for the value of the air conditioning unit he had paid for is prescribed in one year as is a quasi-delictual action under LSA-Civil Code, Articles 3536, 3537, or in ten years as a breach of a contractual obligation under LSA-Civil Code, Article 3544. If the longer prescriptive period is applicable, Ramsey is entitled to credit for the unit purchased and not delivered; if the shorter, he is not, and the District Court correctly refused him credit.
We think our learned brother below fell into error in applying the shorter limit.
The Carter-Allen Jewelry case relied upon specifically pointed out in applying the one-year limit that the action was not one "growing out of any contractual relations between the plaintiff and the defendant", 165 La. 888, 116 So. 223as is the present case. (The McGuire case cited was a suit against the receiver of stolen goods, and likewise did not involve any contractual *839 relationship between the parties.) We do not think the reconventional demand to be grounded upon tort, as so ably argued by counsel for the appellee.
Even had the petition in reconvention contained allegations that Ramsey's property left in the possession of the plaintiff store was negligently lost or destroyed by the latterwhich it does not, this would not necessarily have converted a suit for the breach of the contract (either of sale or deposit) into a tort suit, and the ten-year rather than the one-year prescription would apply. Lafleur v. Brown, 223 La. 976, 67 So.2d 556; C. W. Greeson Co. v. Harnischfeger Corp., 219 La. 1006, 54 So.2d 528; American Heating & Plumbing Co. v. West End Country Club, 171 La. 482, 131 So. 466. Cf. the latter case's summary, 131 So. 469: "If the action is purely one in tort, then it is prescribed by one year. If the action is predicated on a breach of the contract, then it is only prescribed in ten years."
We think that the reconventional demand is grounded on the breach of the plaintiff store's contractual obligation to deliver defendant Ramsey's air-conditioning unit bought from and deposited with it. In our opinion, the duties of the store are set forth, as the District Court concluded, not only by the articles regulating "Sale", Article 2438 et seq., but also by those regulating "Deposit", Article 2926 et seq. We do not think the articles to be inconsistent.
(We might add, although we do not think this requires discussion, that neither sales nor deposit agreements are required to be in writing: Cf., LSA-C.C. Article 2441: "The verbal sale of all movable effects, whatever may be their value, is valid * * *."; LSA-C.C. Article 1816, "* * * If an offer is made of an article in deposit, and the article is received, the contract of deposit is complete. * * *")
In a contract of sale, "The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells," Article 2475, LSA-C.C. (Italics ours.)
The appellee store correctly urges that the two following codal articles pertaining to sales are also applicable:
"Art. 2468. Until the thing sold is delivered to the buyer, the seller is obliged to guard it as a faithful administrator; and if, through want of this care, the thing is destroyed, or its value diminished, the seller is responsible for the loss."
"Art. 2469. The seller is released from this degree of care, when the buyer delays obtaining the possession; but he is still liable for any injury which the thing sold may sustain, through gross neglect on his part." (Italics ours.)
We think that the appellee store correctly argues that the seller is only liable when the thing left in his possession at the request of the buyer is lost or destroyed through gross neglect upon his part.
Parenthetically, this is the standard of care applicable to bailments for the sole benefit of the bailor, 8 C.J.S. Bailments § 28, p. 278 (whereas the standard in bailments for the mutual benefit of the bailor and bailee is that of ordinary care, Id., § 27, p. 269, and for the sole benefit of the bailee, that of great care, Id., § 29, p. 280.) The common law bailment is analagous to, but not necessarily identical with, the civil law deposit.
The standard of care of the depositary under our Code is regulated by Article 2937, which is "to use the same diligence in preserving the deposit that he uses in preserving his own property", and by Article 2938, which provides that this obligation is rigorously enforced in certain instances, as when the deposit is made solely for the depositary's own advantage. (This latter is equivalent to the standard of care exacted of the bailee-depositary in bailments for his own sole benefit.)
*840 In interpreting codal articles, we must bear in mind that "The Code is a general system of law promulgated by legislative authority, and effect must be given to all its provisions as such. Its various articles forming parts of a complete system must be construed with reference to each other and to harmonize with its general purpose," Lowe v. Home Owners' Loan Corp., 199 La. 672, 6 So.2d 726, 730. Thus we see no inconsistency between LSA-Civil Code, Article 2937, providing that ordinarily the depositary is held only to a duty of ordinary care (see e.g., Miller v. Hammond Motors, La.App. 1 Cir., 40 So.2d 29, 31) and LSA-Civil Code, Article 2469, which we interpret to provide that the depositary is liable only in the case of his own "gross neglect" for the loss of goods which he sold to another but delays delivery and retains possession thereof at the request of the buyer.
But that the seller is liable only in case of his own "gross neglect" does not convert a suit or reconventional demand based upon such cause of action into one sounding in tort subject to the prescription of one year, see Lafleur v. Brown, 223 La. 976, 67 So.2d 556, and other cases above cited holding that the ten years' prescription applied to breaches of contract even though based upon negligent acts of the obligor. The phrase in question is simply descriptive of the standard of care applicable.
To reiterate our conclusion, the cause of action upon which the defense and reconventional demand is based is for the breach of the contractual obligation to deliver the goods sold and deposited with the plaintiff store, Article 2475, LSA-C.C., Articles 2944, 2945, LSA-C.C., and it is not prescribed herein, since the demand was judicially asserted within ten years, Article 3544, LSA-C.C.
But the appellee store urges that it cannot be held liable for the disappeared air conditioner, since there is no evidence in the record that it is guilty of "gross neglect". There is no evidence whatsoever concerning the disposition of the unit, because the store's employees have absolutely no knowledge of what happened to the air conditioner it had sold to Ramseywhether it was stolen, sold by mistake to another customer, deteriorated and thrown away, or otherwise lost.
This argument overlooks the legal principle that the depositary has a legal duty to return the article deposited in the same condition as received, and that loss of or damage to the article while in his custody establishes a prima facie case against the depositary. Jacques v. City Parking Service, La.App.Orl., 97 So.2d 78; Hazel v. Williams, La.App. 2 Cir., 80 So.2d 133; see also: Standard Motor Car Company v. State Farm Mutual Auto. Ins. Co., La.App. 1 Cir., 97 So.2d 437. (The prescriptive period applicable to the depositary's action has, incidently, been specifically held to be that of ten years. Rechlman v. Calamari, La.App. Orl., 94 So.2d 311.) "A bailee who fails to return the property according to the contract of bailment is liable to the bailor for the value of the property unless the bailee shows that the property was lost or destroyed without fault or negligence on his part," Poydras Fruit Company v. Weinberger Banana Co., 189 La. 940, 181 So. 452, 455.
As the Jacques case illustrates, 97 So.2d 78, the depositary does not satisfy his burden of exculpating himself and defeating the depositor's prima facie case by simply stating that he does not know what happened to the article deposited. If it did, this would put a premium upon ignorance, and a depositary unable or unwilling to describe the circumstances surrounding the loss of the deposited article would be in a better position than one who honestly testifies to circumstances from which the court might draw the inference of the latter's neglect.
The burden of explanation created by the loss or damage of the deposited article is not satisfied by silence. From the explanation offered by the depositary of the loss or damage, the court evaluates whether *841 in the light of this evidence (and of any other evidence offered in the case) the depositary has satisfied the legal duty or standard of care imposed upon him with regard to the article deposited with him. E. g., compare Niagara Fire Ins. Co. v. Shuff, La.App. 1 Cir., 93 So.2d 325, with Wood v. Becker Welding Shop, La.App. 1 Cir., 34 So.2d 924. In the absence of any explanation whatsoever, breach of his duty by the depositary is presumed. Jacques v. City Parking Service, Inc., La.App.Orl., 97 So.2d 78.
It is our opinion, therefore, that the defendant Ramsey is entitled to credit for the value of the air conditioner bought and paid for by him and lost by plaintiff store while in the latter's custody.
On February 7, 1951, Ramsey bought the air conditioner in question for a total price of $566.50 including sales tax. His counsel suggests that the measure of recovery for the breach of a sales contract should include the difference between the contract price and the market price on the date the obligation to deliver was breached LSA-Civil Code, Articles 1934, 2486, Pepper v. Katz, La.App.Orl., 77 So.2d 891. The model of air conditioner bought by Ramsey was discontinued during the interval of non-delivery, and therefore plaintiff attempted to prove the replacement cost of an equivalent model to be $635.
While this measure may be correct in cases where the non-delivery results solely from the fault of the seller, we do not think this measure necessarily applies where the seller continues in possession of the property sold and delays delivery thereof at the request of the buyer.
For one thing, a deposit relationship was created by agreement of the parties, and ordinarily "The depositary is only bound to restore the thing in the state in which it is at the moment of restitution," Article 2945, LSA-C.C. For example, a depositary who in good faith and without negligence has sold the deposited article is required to return only the good faith price he received, not the cost of the article to the depositor. Articles 2946, 2947, LSA-C.C.
It would not be fair to require the depositary to pay the depositor the price of a brand-new machine as of several years later when the depositor as purchaser requested the seller-depositary to retain possession of the equipment and did not request delivery during that time. Were the machines still in the seller's warehouse, its value at that time would be considerably less than when new. The delay in the delivery was at the request of the purchaser, and depreciation sustained thereby should not be charged to the seller. If the machine had been sold through error during the interval, as an older machine presumably the purchase price received for it would be less than when new.
We think therefore that the buyer is deprived of his action under Article 2486 LSA-Civil Code resulting from the nondelivery: the only such damage sustained by him is the increased cost of securing a similar air conditioning unit due to the rise in prices during the interval between the sale and the requested delivery, and that delay is solely due to his own request.
But the difficulty in applying a rule awarding the buyer-depositor only the depreciated value of the equipment in the present instance is that, in the complete absence of any information whatsoever as to the disposition of the machine, we are unable to fix the date or value of it at the time of the loss or resale thereof; nor is there any evidence of the value thereof at the time its delivery was first requested unsuccessfully by the buyer.
The situation thus presented to us arises from the carelessness of both parties. The buyer neglected to perform his obligation of accepting delivery, Article 2549, LSA-C.C., for an unreasonably long length of time and beyond what was reasonably contemplated at the time of the sale; (although, it is true, the seller did not put him in default under the provisions of Article 2555, LSA-C.C., *842 which might have placed the burden of the loss upon the buyer.) The seller is careless, at least, in being completely unable to determine what happened to the property of its customer entrusted to it and is certainly in default of its obligation to deliver the article left with it, upon the request of the buyer-depositor, albeit such request was so delayed.
Under the present record, we are unable to say whether the obligor-depositary-seller could have performed its obligation to deliver the purchased equipment right after the sale; the deposit could have been destroyed or lost or re-sold, so far as any explanation offered by the seller-depositary is concerned, immediately after the sale.
Thus, it appears to us a fair measure of the buyer's recovery or credit would be the sales price to him of the article for which he paid and which he never received, that is $566.50. The value of the deposit at the time the depositary-vendor was unable to perform may be said to relate back to the inception of the deposit, in the absence of any other explanation as to the value of the particular air conditioner deposited at the time it was lost, destroyed, or re-sold, or at the time the buyer-depositor demanded delivery of it. (If, however, the cost of an air conditioner similar to that purchased had gone down instead of up during the interval the seller retained possession of it at the request of the buyer, and before the buyer's demand for its delivery, the buyer's recovery might be limited to the value at the time of his demand on the theory that he should not be allowed to profit by the delay in the delivery occasioned for his own convenience and at his own request.)
The District Court rendered judgment in favor of the plaintiff for goods purchased in the amount of $590.94, which we think is supported by the evidence reflected by the record. Allowing defendant credit of $566.50 for the undelivered air conditioning equipment, plaintiff is entitled to a judgment in the reduced amount of $24.44.
However, plaintiff argues that the amount of credit for the air conditioning unit, if allowable to defendant Ramsey, is not pleaded in compensation of its own claim, but is only asserted by reconventional demand. This distinction would not be important except that by his reconventional demand defendant prayed for judgment only for the alleged excess in the present value of the air conditioning unit, that is $249.31, over the account for which suit was instituted (which excess, resulting from the increase in replacement cost because of a rise in prices, we have held not to be allowable.) If defendant had asserted his claim by way of reconventional demand only, thus apparently judgment in his favor upon same would be limited to $249.31, the amount prayed for, even though the actual amount allowable to Ramsey for the equipment lost by plaintiff is found to be $566.50.
We think, however, that this manner of pleading indicates that defendant pleaded the facts to constitute the special defense of compensation.
"Compensation, or set-off, is a mode of extinguishing debts, which takes place when it happens that both plaintiff and defendant are indebted to each other; each retaining, in payment of the sum due to him, the amount which he owes to the other," Article 366, Code of Practice. See also Articles 2207, 2208, LSA-C.C., Saunier v. Saunier, 217 La. 607, 47 So.2d 19, 22. "The defendant may plead compensation, or set-off at every stage of the proceedings, provided it be pleaded specially," Article 367, Code of Practice "Compensation may be pleaded, either in the answer to the principal demand, or it may be claimed by a distinct and separate demand," Article 368, Code of Practice.
Rather than asserting in his reconventional demand a prayer for the entire value of the lost equipment, defendant just sought judgment for the excess over the account owed plaintiff, treating the balance *843 of the sum due as having extinguished his debt owed to the plaintiff store for the account upon which suit was instituted herein. It is unnecessary to specifically plead the legal conclusion that "compensation" or "set off" was intended, as plaintiff seller seems to argue, if the facts specially pleaded (as here) raise this special defense. Cf. Griffin v. Bank of Abbeville & Trust Co., La.App., 1 Cir., 88 So.2d 231, certiorari denied.
As to the court costs, since there is a surplus debt due the plaintiff, the costs of the trial below shall be assessed against defendant, who failed to tender same. Article 369, Code of Practice. However, the costs of the appeal shall be assessed against plaintiff-appellee, since we have ruled in favor of the appellant upon the sole question on appeal, which was the availability of the value of the lost air conditioner as a credit against the more recent purchases here sued upon. Article 908, Code of Practice.
For the above and foregoing reasons, the judgment appealed from is amended by reducing the award to plaintiff to $24.44, plus legal interest thereupon from date of judicial demand until paid. All costs of the proceedings below are assessed against defendant-appellant; costs of this appeal are assessed against plaintiff-appellee.
Amended and affirmed.

On Application for Rehearing.
PER CURIAM.
Among other grounds urged by plaintiff-appellee that a rehearing should be granted is the suggestion that this court erred in allowing compensation of defendant's claim against plaintiff's claim, since both debts are allegedly not "equally liquidated and demandable" as required by Article 2209, LSA-C.C. (Hence, it is argued, defendant's credit against plaintiff's claim should at least be limited to the prayer in the reconventional demand for judgment in the amount of $249.31, which was the overplus of defendant's claim exceeding plaintiff's, according to the allegations of the reconventional demand.)
In the fairly recent case of Saunier v. Saunier, 217 La. 607, 47 So.2d 19, it was stated by our Supreme Court in rejecting similar contentions, 47 So.2d 23:
"In this case not only had the defendant the proof in his hands and was ready to prove the debt arising from the plaintiff's having converted the sum of money to her own use, promptly and summarily, but he did make that proof to the satisfaction of the trial judge whose findings we approve. It was thus removed from the realm of dispute. * * *"
Quoted with approval is this definition, 47 So.2d 22: "`A debt, says Pothier, is liquidated when it appears that something is due, and how much.'"
See also Caldwell v. Davis, 2 Mart.,N.S., 135, summarizing French and Spanish source authorities to the effect that debts are equally litigated and demandable if the court can readily establish the amounts allegedly due.
It can also be stated that the present opposing debts are "equally liquidated and demandable" for purposes of compensation, since the amount of each "is capable of ascertainment by mere calculation or computation in accordance with established or accepted legal standards," 80 C.J.S., Set-Off and Counterclaim, § 43, p. 69. Cf. also, "any claim capable of exact ascertainment is a liquidated demand," 80 C.J.S., Set-Off and Counterclaim, § 43, pp. 70, 71.
The application for rehearing denied.
Rehearing denied.