SAMUEL, Judge.
This is an action for breach of express warranties contained in a written option to purchase.
For many years prior to 1952 plaintiff’s family were majority stockholders in a Louisiana corporation known as New Orleans Stockyards, Inc., but lost control with the death of plaintiff's father. Shortly thereafter Salta Corporation was incorporated under the laws of this state. Its primary asset consisted of stock in New Orleans Stockyards, Inc. Salta and the five defendants in this suit, who owned and controlled Salta, owned a total of 2518 of the outstanding 5,000 shares of Stockyards, in which latter corporation plaintiff was also a stockholder. Salta issued one of its own shares for each share of Stockyards owned by the former corporation.
Plaintiff desired to purchase the Stockyards stock held by Salta and the defendants. On August 24, 1959, after several years of tedious and often bitter negotiations during all of which both sides were represented by counsel, the litigants entered into the written option agreement whereby, for a consideration of $10,000.00, plaintiff obtained the right to purchase all shares of the capital stock of Salta and 170 shares (owned by the defendants individually) of Stockyards for $100.00 per share. Because that type of transfer would constitute an income tax advantage for the defendants, at their request plaintiff agreed that instead of transferring the Stockyards shares owned by Salta directly to plaintiff, he would acquire those shares through purchase of the Salta stock.
Plaintiff exercised the option and on February 23, 1960, the formal act of sale was executed. At that time defendants delivered and plaintiff accepted 2348 shares of Salta and 170 shares of Stockyards for a consideration of $251,800.00, $125,900.00 (consisting of $115,900.00 plus a credit of $10,000.00, the option consideration already paid) of which was paid in cash. Plaintiff gave six promissory notes in varying amounts for the balance of $125,900.00.
In accepting the shares delivered and in paying the consideration therefor plaintiff did not waive, but specifically reserved, all warranties including the following expressed warranties contained in the option:
“(a) That the Salta Corporation, among its assets owns 2348 shares of the capital stock of the New Orleans Stockyards, Inc.
“(b) That the annexed balance sheet, marked Exhibit A, of the Salta Corporation reflects the true financial status of the said corporation as pf July 31, 1958.
“(c) That the annexed balance sheet marked Exhibit B, of the New Orleans Stockyards, Inc., reflects the true financial status of the said corporation as of June 30, 1959.
“(d) That the financial condition of the Salta Corporation and the New Orleans Stockyards, Inc., respectively, on the date of delivery of shares by GRANTEES unto GRANTOR, as called for herein, shall be at least as good as it appears in the said Exhibits A and B, less only ordinary operating' expenses as may be required, and that neither the Salta Corporation nor the New Orleans Stockyards, Inc., have any liabilities of any nature other than those as shown on the attached Exhibits A and B.
“(h) That the corporate structure of the Salta Corporation and the New Orleans Stockyards, Inc., will not change during the period of this agreement nor will the assets of either corporation, be encumbered and/or alienated other *793 than as shown on the annexed Exhibits A and B.
“(i) GRANTEES specifically reserve the right to dispose of any assets of the Salta Corporation, other than shares of stock of the New Orleans Stockyards, Inc.”
Salta’s balance sheet, attached to the option agreement, contains a footnote which reads as follows:
“Salta Corporation, Capital.
2418 shares of capital stock of Salta Corporation outstanding, 700 of which are owned by the Corporation as Treasury Shares”.
All parties now concede that only 70 shares of Salta’s capital stock were owned by that corporation as treasury shares and the 700 share figure in the footnote is an error; the figure should have been 70 instead of 700. At the act of sale plaintiff received and paid for 2,348 shares (2418 minus 70) of Salta instead of 1,718 shares (2418 minus 700) which he claims he should have received under the warranties and balance sheet footnote quoted above. In this suit one of the amounts he seeks is $63,000.00, the value of $100.00 per share of the 630 shares not held by Salta as treasury shares. In addition, Salta had owned on the date of the option, and had declared a dividend and distributed to the defendants prior to the sale, 28 shares of the capital stock of St. Bernard Bank & Trust Company, valued at $686.00, and a certain lot of ground, valued at $1,500.00. Plaintiff’s suit therefore is for both of these amounts plus the $63,000.00, or a total of $65,186.00. The trial court rendered judgment in favor of plaintiff in that total amount, with legal interest and costs. The defendants have appealed.
In this court defendants have filed a plea of prescription of one year. As to the claims relative to the bank stock and the immovable property they additionally argue that the option agreement specifically permits them to dispose of the assets of Salta other than Stockyards stock [see (i) ]. As to the claim for $63,000.00, representing the value of the 630 shares not held as treasury shares by Salta, they argue that the error was “typographical” and harmless because plaintiff knew the true facts and was not misled by, nor did he rely upon, the error.
The plea of prescription is based upon LSA-C.C. Art. 2534 which provides a prescription of one year in a redhibition action. Defendants’ contention is not sound. Red-hibition is the avoidance of a sale on account of some vice or defect in the thing sold or on account of a false representation of quality or fitness. LSA-C.C. Arts. 2520, 2529. The action of quanti minoris, also briefed by the defendants, is for a reduction of the price of the sale rather than for its rescission and is subject to the same rules which govern the redhibitory action (LSA-C.C. Arts. 2541, 2542, 2544), and subject to the same prescription of one year (LSA-C.C. Art. 2534). Plaintiff does not claim the stock had any vice or defect; nor does he accuse the defendants of any false representation of quality. His claim is based on alleged breaches of express contractual warranties as to quantity, not to fitness or utility, and is therefore subject to the prescriptive period of ten years. LSA-C.C. Art. 3544; Olinde Hardware & Supply Co. v. Ramsey, La.App., 98 So.2d 835.
We are of the opinion that the defendants are liable for the values of the 28 shares of bank stock and the lot of ground for which they have failed to account. They have not pressed their contentions relative to these two items in argument before this court and, in view of the fact that the option warranty (d) provides the financial condition of Salta shall be at least as good as it appears in the balance sheet and the evidence is insufficient to show any valid agreement or understanding to the contrary, plaintiff is entitled to recover the two amounts and the trial court judgment is correct as to them.
*794 The important question to be answered is whether or not plaintiff is entitled to recover the $63,000.00 he claims for the alleged failure of defendants to deliver 630 Salta treasury shares.
Plaintiff testified he used the balance sheet and relied upon it in computing the cost of acquiring the Salta stock, particularly the erroneous footnote which he did not know was in error and which led him to believe that Salta owned 700 of the total of 2418 shares. Therefore, according to plaintiff, he was led to believe that the defendants owned 1718 shares which, at $100.-00 per share would have cost him $171,-800.00. He admitted that he had received, before the closing sale, a letter from defendants’ attorney listing the names of each Salta shareholder and the number of shares owned by each and that the list contained 2348 shares instead of 1718 shares. His only explanation of this difference is that he was under the impression that the defendants had purchased the 630 shares from the corporation, or that the corporation had otherwise disposed of those shares, and that the sum of $63,000.00, representing the purchase price, would be among Salta’s assets. He further testified that at the sale he did not question the $63,000.00 difference in the purchase price or the number of shares delivered to him by the defendants and that he made his present claims after he discovered the discrepancies as a result of an audit by his certified public accountant.
The defendants’ testimony is to the effect that the Salta stock was carried on that corporation’s books at $10.00 per share or a total of $700.00 for the 70 treasury shares held by the corporation. When the figure relative to the amount of treasury shares was extended in the footnote of the balance sheet it appeared as 700 instead of 70 shares. This was an error not discovered by defendants until June 10, 1960, when plaintiff made his claims against them. In addition, as a result of their negotiations, plaintiff knew that for each share of Salta there was issued one share of Stockyards (plaintiff denied such knowledge).
No contention is made that there was any fraud or intentional misrepresentation on the part of the defendants. And in view of the fact that they knew their books would be closely checked and the error of 630 treasury shares would surely be discovered, we are satisfied that the defendants were not aware of the error until plaintiff made his claims.
From a careful consideration of all the testimony and evidence adduced during the trial of this case we are of the opinion that plaintiff was not misled by the footnote error.
During the negotiations plaintiff had made several offers to purchase the Stockyards stock, in varying and increasing amounts up to $95.00 per share, all of which were refused. His final offer of $100.00 per share was accepted. If he now is able to acquire Salta’s 2348 shares of Stockyards for $171,800.00 in effect he would be paying approximately $73.00 per share for the Stockyards stock, much- less than he had actually bargained to pay. His work sheet, prepared by him prior to the sale and introduced in evidence, indicates that he anticipated paying $100.00 per share for the Stockyards stock, the price he had agreed upon. Also prior to the sale, he prepared checks and promissory notes which totaled $251,800.00. Without protest or question he paid this amount at the sale and accepted delivery of 2518 shares, 2348 owned by Salta and 170 owned by the defendants individually. Plaintiff was an experienced businessman and we are unable to believe his explanation that he did not question the $63,000.00 difference because he felt that the defendants had purchased from Salta, or that corporation had otherwise disposed of, 630 of the 700 Salta treasury shares. At the sale he was furnished with a balance sheet which did not reflect this $63,000.00 difference and certainly, as a businessman, he could not reasonably have expected the defendants to invest $63,-000.00 to purchase stock which they were committed and obligated to sell at a later *795 date at the same price. Nor can we see any basis whatsoever for a belief that other persons may have purchased the treasury shares. In addition to all other considerations plaintiff knew that defendants’ request to handle the transfer simply by the sale of their Salta stock was because such a procedure would constitute an’ income tax advantage to them. He must have known also that a sale of Salta treasury shares between the date of the option (August 24, 1959) and the date of the'- sale (February 23, 1960), less than a six month period, could result in a tax disadvantage to the defendants whose tax problem involved long term as opposed to short term capital gains.
For the reasons assigned the judgment appealed from is reversed only insofar as it awards to the plaintiff the sum of $63,000.-00 being the value at $100.00 per share of 630 shares of Salta Corporation not held by that corporation as treasury shares. Accordingly, the judgment is amended to reduce the amount awarded plaintiff from $65,186.00 to $2,186.00. As thus amended, and in all other respects, the judgment is affirmed; costs in this court to be paid by the plaintiff.
Affirmed in part; reversed in part.