HAMITER, Justice.
 

 In this cause two appeals from separate judgments are being prosecuted by the ordinary partnership of C. W. Greeson Company and the individual members thereof, all of whom are domiciled allegedly in Bossier Parish and are hereinafter referred to as appellants. The judgments were rendered in favor of Harnischfeger Corporation, a non-resident entity domiciled in the State of Wisconsin and hereinafter referred to as appellee.
 

 To give the background of this complicated litigation, it appears that in the year 1945 appellants purchased from appellee a large piece of machinery described as one P & H Model 1055 L C Dragline, paying in cash therefor approximately $55,000. Later, between September 26, 1946 and May 1, 1947, appellants, on terms of credit and by way of an open account, bought various goods and merchandise and obtained certain services from appellee.
 

 On March 24, 1948, appellee filed a suit against appellants in the District Court of Bossier Parish, bearing No. 16,471 on its docket, to recover the sum of $2,372.13, allegedly the balance due on the open account. Answering the suit, appellants denied the correctness of the asserted balance; and, in reconvention, they demanded of appellee the sum of $12,566.62 for an alleged breach of contract to deliver the dragline (purchased in 1945) in good condition. ' Of -this amount, according to appellants’ averments, $2,666.62 was for replacing defective parts and the -balance was for loss of use of the machine for thirty-three days.
 

 During the trial of that suit on February 28, 1949, after appellee had rested its case and one witness -on behalf of appellants had been examined, the attorney for the latter announced that the amount demanded in reconvention was much less than was actually due by appellee. Then he moved that the existing reconventional demand be dismissed as of non-suit and that he be permitted to file in open court, while the suit was still pending, ,a separate and distinct reconventional demand for a larger amount pursuant to article 377 of the Code
 
 *1011
 
 of Practice. The district judge allowed the entering of the requested non-suit; but he refused permission to file the new reconventional demand in open court, stating that any further demand by appellants would have to be made in a separate proceeding by way of a direct action.
 

 Whereupon appellants, as thus required, filed on the same date the instant action, being No. 16,965 on the docket of the Bossier Parish District Court, the petition of which shows that appellee is indebted unto them in the sum of $31,226.62 “for the reasons hereinafter alleged, for which indebtedness plaintiffs institute by way of reconvention this demand in consequence of that brought by defendant against them in . said suit No.’ 16,471.” The petition then alleges in detail the referred to reasons, they being substantially the same as those set forth in the rcconventional demand in suit No. 16,471 and which will be discussed hereinafter. The total amount claimed is itemized as $28,560 for loss of use of machine for sixty days and $2,666.62 for parts and labor in making repairs.
 

 Service of citation was sought to be made on appellee through one of its representatives, who was'then a witness in court and also through the Secretary of State.
 

 On March 14, 1949, the appellee filed exceptions to the jurisdiction of the court ratione personae and to the citations.
 

 On March 26, 1949, appellants obtained a writ of attachment, the basis .for which was appellee’s non-residence; and thereunder they caused to be seized the rights,, title and interest of appellee (as plaintiff) in suit No. 16,471.
 

 On April 12, 1949, appellee presented a. written motion in which it prayed that the-writ of attachment be dissolved and “that a fee for its attorneys in the amount of not less than $250 be taxed against plaintiffs herein for their services in obtaining a dissolution of said writ of attachment.”'
 

 'In suit No’. 16,471 the district court on the-same date rendered a judgment in favor of appellee and against appellants for the principal sum of $2,373.13. It was signed on-April 26, 1949, and from that judgment the-partnership appealed. The appeal is docketed in this court as No. 39,500, Harnischfeger Corp. v. C. W. Greeson Co., 219 La. 546, 53 So.2d 488.
 

 In the instant cause the district court, on June 14, 1949, sustained appellee’s exception to the jurisdiction ratione personae. Four days later it refused to reconsider that ruling, and it also overruled appellee’s motion to dissolve the writ of attachment.
 

 To obtain a review of the ruling on the exception to the jurisdiction ratione personae, appellants applied here for remedial writs; but the application was denied on the ground that there was an adequate remedy by appeal. Thereafter, on October 14, 1949, the district court signed a formal judgment sustaining such exception and ordering that appellants’ action in personam against appellee be dismissed. Appellants prosecuted an appeal from this judgment,
 
 *1013
 
 being No. 39,714 on the docket of this court, and it is one of the two appeals presently under consideration.
 

 Also on October 14', 1949, appellee filed in the district court, in the instant cause, exceptions of no right and no cause of action, a plea to the court’s jurisdiction ratione materiae, and pleas of prescription of one and three years. All of these were overruled, except the plea of one year prescription which was sustained. In sustaining that plea the district court decreed a complete dismissal of appellants’ demand; and from the judgment appellants appealed. The appeal, being No.- 39,869 on the docket of this court, is the second in the cause requiring our attention.
 

 Appellee has answeréd the appeals, asking for an affirmance of the judgments. In the alternative it prays that we sustain the exceptions to the citations, to the jurisdiction of the court ratione materiae, and of no right and no cause of action, all of which were overruled by the district judge.
 

 The exception to the jurisdiction ratione personae, which was'sustained by the district judge and resulted in the dismissal of appellants’ action in personam, is grounded on the contention that this is an original or a direct suit involving a principal demand against a non-resident corporation that does no business in this state and, therefore, a personal judgment cannot be obtained herein.
 

 In our opinion appellants’ demand is merely one in reconvention, just as it is termed in their pleadings, filed under the authority of Code of Practice, Article 377, reading:
 

 “In all cases of reconvention, the defendant may plead it either as an exception ’in his answer to the principal demand, or institute a distinct and separate demand before the court in which the main action is pending; and the original plaintiff shall be bound to answer without pleading to the jurisdiction of the court, even if he has his domicil elsewhere, provided the court be competent.”
 

 As before shown appellants, after non-suiting their initial reconventional demand (as was permissible) and while appellee’s main action was pending, sought to file this distinct and separate demand in open court and in the main action. Except as to the amount claimed the demands were substantially the same, this being shown by the following statement contained in the brief of appellee’s counsel:
 

 “ * * * It is true that in the former suit damages were fixed at $12,566.62, whereas in the present suit these alleged damages have been inflated to a figure of $31,226.62, but other than in the amount of damages claimed, there is no material difference between the alleged claim which was asserted as a reconventional demand in Suit No. 16,471 (Supreme Court docket No. 39,500), and the alleged claim which is the subject of this suit.”
 

 Sustaining an objection of appellee’s counsel, the district court ruled that the
 
 *1015
 
 distinct and separate reconventional demand could not be filed in open court and in the main action. This ruling, it seems to us, is contrary to the provisions of the above quoted codal article.
 

 Counsel for appellee say, however, that a demand in reoonvention is an incidental demand, it being treated of in the chapter of the Code of Practice entitled “Of the Incidental Demands Which May be Made Pending the Action”; and, citing Article 154, they argue that the incidental demand must be decided along with the principal demand. According to Code of Practice, Article 375, as amended by Act No. 50 of 1886, a demand in reconvention against a non-resident plaintiff need not be incidental to the main cause of action. But conceding arguendo that all reconventional demands must be decided along with the principal demand, apparently this requirement could have been met with respect to appellants’ demand herein. It was offered on February 28, 1949, and a decision on appellee’s main demand was not rendered until April 12, 1949.
 

 If it be true then that the instant demand of appellants is one in reconvention, appellee, according to said Article 377 of the Code of Practice, was without right to question the authority of the Bossier Parish District Court (which was otherwise competent) to render a personal judgment against it.
 

 Should we be in error as to the applicability of such codal article to this cause, however, it is certain that appellee has waived its right to challenge the court’s jurisdiction, as well as the sufficiency of the citations. In a written motion appellee not only asked that appellants’ writ of attachment be dissolved, but it also prayed, in reconvention, that its attorneys be awarded a fee of $250 for their services in obtaining a dissolution of the writ. The institution of that reconventional demand, invoking the court’s jurisdiction to obtain damages from appellants, must be considered as having brought appellee into court for all the purposes of the case. Stringfellow v. Nowlin Brothers et al.,'157 La. 683, 102 So. 869.
 

 The exceptions to the jurisdiction ratione personae and to the citations, therefore, will have to be overruled.
 

 We consider next appellee’s exceptions of no right and no cause of action and plea of one year prescription, all of which are directed exclusively at the petition of appellants. Among the allegations of such petition are the following:
 

 “On or about October 22, 1945, defendant sold to plaintiff C. W. Greeson Company a P & H Dragline Excavator for $53,865.70 cash, as shown by invoice, identified as Exhibit D-l, and bill of lading identified as Exhibit D-2, both of said instruments being attached to and made part of plaintiffs’ answer in said Suit No. 16,471, and further evidenced by a written offer and acceptance, the latter dated September 7, 1945, as amended by letter of Septem
 
 *1017
 
 ber 27, 1945, approved October 11, 1945, as shown by duplicate originals, also attached to plaintiffs’ amended answer in said suit No. 16,471.
 

 “Plaintiffs purchased said machine for use in building and constructing levees, highways, removing embankments, filling drains, and generally to accomplish the purpose for which draglines are manufactured and sold.
 

 “Defendant warranted said machine to be free of hidden defects and redhibitory vices, and fit for the purpose for which it was intended and purchased.
 

 “Defendant agreed to furnish an expert operator to superintend the unloading of said machine, to track it about nine miles from Bradley, Arkansas, to the place where plaintiffs were to use it, to put it in service, and to supervise its operation for seven days. Accordingly, on or about November 1, 1945, defendant sent one Hank Carleton to Bradley, Arkansas, for said purposes. After the machine was unloaded from the railroad car on which it was shipped, defendant sent another representative and employee from Milwaukee, Wisconsin, whose name plaintiffs do not now recall, to take charge of and track it to plaintiffs’ said job and there to put it in service. In that operation, on or about November 3rd and 4th, 1945, defendant’s employee, in full and exclusive charge of said machine, ran it over a steep embankment into a drainage canal ten to twelve feet deep, when it came to rest at an angle. While endeavoring to remove the machine on its own power from said position, the water failed to circulate in the starting motor, thus overheating, burning, damaging and rendering it useless. Other parts of the machine were also damaged in said operation, as hereinafter alleged.
 

 “When said machine was delivered to plaintiffs’ job near Bradley, Arkansas, as alleged, it was unfit for the purposes for which it was manufactured, intended and purchased, in the following respects:
 

 “1. The starting motor had been overheated, burned and rendered useless.
 

 “2. The block assembly of the machine was in bad condition in that the crank shaft and crank case were out of alignment, the bearing cradles displaced and out of line Nos. 2 and 4 being higher than the remaining five thereof, and the bearings in said cradles being scorched and worn, said condition having been caused by and due to defects and vices in the manu-' facture of the dragline, particularly the assembly block, motors and engines thereof, which defendant knew on and prior to October 22, 1945, and subsequent thereto, but failed to disclose to plaintiffs; and by the overheating of said parts in tracking the machine from Bradley, Arkansas, to plaintiffs’ job nine miles distant, particularly in removing it from the drainage canal, as alleged.
 

 “Recognizing its warranty of said machine, and waiving any exclusion thereof, between the dates of November 3, 1945, and
 
 *1019
 
 August 31, 1946, defendant replaced without charge the starting motor; and it attempted to make certain adjustments and repairs thereof, and to remedy said condition, which it never succeeded in doing; that it then refused further efforts to that ’ end, making it necessary for plaintiffs to repair said machine, which they did at a cost of $2,666.62 for parts and labor for that purpose, as shown by itemized statements attached to and made part of their answer and reconventional demand filed in said suit No. 16,471.
 

 “Because of defendant’s violation and breach of its contract to deliver said machine in good condition and fit for the purpose for which it was intended and purchased, plaintiffs lost the use thereof for 60 days between the dates of November 3, 1945, and January 26, 1947, reasonably worth $476.00 per day, or $28,560.00, in addition to $2,666.62 for parts and labor in repairing the same, as alleged.”
 

 Unquestionably, both a right and a cause of action are disclosed by the foregoing allegations as to a part of appellants’ demand, at least. Thus, it is shown that .the machine, because of defects in the manufacture thereof known to appellee and concerning which a warranty was given, was unfit when delivered for the purpose for which it was purchased; and that appellee refused to remedy the condition, making it necessary for appellants to provide the needed repairs. Moreover, it is well established that a suit will not be dismissed on exceptions of no right and no cause of action directed at the petition where the allegations of fact set forth a right and a cause of action as to any part of the demand. Smith v. Kennon et al., 188 La. 101, 175 So. 763; Adkins’ Heirs v. Crawford, Jenkins & Booth, Inc., et al., 200 La. 561, 8 So.2d 539; Ingersoll Corporation v. Rogers, 217 La. 79, 46 So.2d 45.
 

 The plea of one year prescription, according to the brief of appellee’s counsel, “is predicated on the contention that although appellants have labelled their demand as one for breach of warranty, a fair appraisal of the allegations of their petition discloses that it is actually a suit in tort.” And in connection with this contention counsel make reference to those allegations which describe the occurrence of an accident whereby an employee of appellee ran the machine into a drainage canal, causing serious damage to it. It is to be noticed, however, that other allegations show that the accident occurred while appellee was undertaking the performance of its agreement to deliver the machine to the place where appellants were conducting operations; and this would indicate that the demand herein is for a breach of contract, notwithstanding that a tort was involved, to which the one year prescription is inapplicable. Appropriate is the following comment contained in Illinois Central Railroad Company v. New Orleans Terminal Company, 143 La. 467, 78 So. 738, 740:
 

 “Another contention of defendant is that if plaintiff has a cause of action, it is- in
 
 *1021
 
 tort, and that the action is prescribed, more than one year having elapsed between the date of the collision and that of the filing of the suit. There is no doubt that the action of the defendant, through its said employes in running this other train into that of the plaintiff, amounted to a tort; but there is no reason why the breach of a contract by means of a tort should not furnish ground for an action for breach of contract. A contractor cannot liberate himself from his contract, or, in other words, destroy its obligation, by committing a tort; and if the obligation is not destroyed, but remains in full force, and the contract is breached, there is evidently a ground of action on the contract. * * * ”
 

 See also American Heating & Plumbing Company, Inc., v. West End Country Club, 171 La. 482, 131 So. 466.
 

 But counsel for appellee argue that regardless of the allegations of the petition, the written contract between the parties is controlling as to warranties and the place of delivery, and that the contents thereof must be considered in determining the exceptions of no right and no cause of action and the plea of prescription. We doubt seriously that such contract is presently before us, since it is not attached to and made a part of appellants’ petition herein nor physically incorporated in either of the transcripts of these two appeals. See Lamorere v. Cox, 32 La.Ann. 1045 and Tremont Lumber Company v. May, 143 La. 389, 78 So. 650. However, the contract is attached to the answer and reconventional demand in suit No. 16,471, of the docket of the district court, which -suit is now pending here under appeal No. 39,500; and we shall consider it.
 

 In the contract it is provided:
 

 “We warrant every part of the machinery, tools, or equipment of Harnischfeger Corporation manufacture covered by this proposal to be of proper materials and first-class workmanship, and in discharge of said warranty agree to furnish, without charge, f. o. b. cars Milwaukee, Wisconsin, any part or parts which may prove defective under normal and proper use within ninety (90) days after you begin to use the same.. *
 
 %
 
 *
 
 99
 

 In view of this expressed warranty by appellee and of the petition’s allegations above discussed we conclude that the district court correctly overruled the exceptions of no right and no cause of action.
 

 With further reference to the plea of one year prescription, grounded as before shown on the contention that this is a tort .action, appellee maintains that delivery of the machine,, according to the contract,, took place in Wisconsin; and that the damages asserted by appellants resulted wholly from the accident occurring after the delivery. Appellants, on the other hand, insist that the agreement called for the delivery to be made in Arkansas at their job,, and that the damages claimed herein resulted partly from the accident while the machine was being transported by appellee
 
 *1023
 
 to that location and partly because of manufacturing defects.
 

 The contract, as we appreciate it, does not disclose with certainty when or where the delivery was to be complete. True, it recites: “Price of equipment $55,415, delivered f. o. b.' cars . at Milwaukee, Wis. * * *.” But this recitation might well relate only to the price and to the payment of freight. Other provisions of the original contract pertinent to the question of delivery are the following: “ * * * for shipment to Vicksburg, Mississippi, via cheapest on or about October, 1945. * * The named delivery is only closely approximate and we assume no liability for damages due to delay in shipment or delivery, nor for damages on account of delays caused by labor disturbances, accidents, delays of carriers, or other causes beyond our control, whether or not similar to the above mentioned causes. * * * An expert operator will be furnished to superintend unloading and starting the machine in operation for a period of
 
 7
 
 days.” And in an amendment to the original contract, in the form of a letter addressed by appellee to appellants, the following is stated: “Please advise the rail point to which you want this machine shipped, and also give us the wording of the sign which you desire painted on the cab of the machine. It is necessary that we have information as to the railroad station to which the machine is to be shipped, so that our Traffic Department can work with the railroad companies prior to shipping date and line up the best route and check clearances of the machine with the railroads so that it will come through without delay in transit.” No written reply to this request is contained in any of the transcripts before us.
 

 From all of which it must be said that the contract is ambiguous with reference to the important question of delivery. And by reason of this ambiguity, as well as because the petition herein does not segregate the claimed damages resulting respectively from the accident and the manufacturing defects, it is impossible to determine the plea of one year prescription on appellants’ pleadings,' including the discussed contract. For making the determination evidence will have to be adduced and considered. We have concluded, therefore, to refer such plea to the merits, to be. disposed of on the trial of the case. See Rhodes v. Cooper et al., 113 La. 600, 37 So. 527 and Cordino et al. v. Liberty Realty & Securities Company, Inc., 172 La. 170, 133 So. 434.
 

 Under its exception to the jurisdiction of the court ratione materiae, appellee contends that its rights and interest in the ■ pending suit No. 16,471, on the docket of the district court, were not subject to the attachment which appellants purportedly levied thereon and, hence, the court acquired no jurisdiction of this matter as a result of the writ. It seems unnecessary to pass upon this exception in view of our holding above that appellee has subjected itself to the jurisdiction of the court for all
 
 *1025
 
 the purposes of the case. Nevertheless, the exception is without merit, and the district court correctly overruled it under the authority of Act No. 220 of 1932, LSA-R.S. 13:3952, and Code of Practice Articles 208, 209, 239 and 241.
 

 For the reasons assigned the judgments appealed from are set aside, the exceptions to the jurisdiction ratione personae and to the citations are overruled, the plea of prescription of one year is referred to the merits, and the cause is remanded to the district court for further proceedings according to law and consistent with the views herein expressed. Appellee shall pay the costs of these appeals and all other costs shall await the final determination of the litigation.