The PURE OIL COMPANY, Plaintiff,
v.
GEOTECHNICAL CORPORATION OF DELAWARE, Defendant.
Civ. A. No. 4510.

United States District Court,
E. D. Louisiana, New Orleans Division.
Feb. 24, 1955.

See also 214 F.2d 476.

Terriberry, Young, Rault and Carroll, Benjamin W. Yancey, William E. Wright, New Orleans, La., for plaintiff.

Lemle & Kelleher, Charles Kohlmeyer, Jr., John May, New Orleans, La., for defendant.

WRIGHT, District Judge.

In the present litigation, the complainant, with its protection and indemnity underwriter intervening, seeks to recover payments made, as maintenance under the general maritime law, to members of the crew of its vessel, the Leo Huff. The seamen in question were injured in an explosion on the Leo Huff caused by the judicially declared negligence of the defendant. Geotechnical Corp. of Delaware v. Pure Oil Co., 5 Cir., 196 F.2d 199. The claim here is based on a provision of the contract for geophysical work in the Gulf of Mexico between Pure Oil and Geotech, in which Geotech agrees to hold Pure Oil harmless from liability on account of acts of negligence on the part of Geotech's employees.[1] The claim is not only for the moneys actually paid the employees of complainant, for which complainant has received reimbursement from intervenor, but also for costs, expenses and attorneys' fees in defending the actions brought against Pure by members of the crew of the Leo Huff injured in the explosion, which costs, expenses and attorneys' fees have not been reimbursed to Pure by the underwriter, although under the policy the underwriter is liable therefor. The policy also subrogates the insurer to any rights which Pure Oil may have in the premises.[2]

The defense is based on the assertion that the "hold harmless" agreement in the contract between Pure and Geotech does not cover a seaman's claim for maintenance since such claim is based on contract and not tort; that if the hold harmless provision does cover seamen's maintenance, Pure has no claim therefor against Geotech since it has already been reimbursed by intervenor and that insurer cannot avail itself of the contract between Pure and Geotech since it was not privy thereto; and that, in any event, the action, as to Pure as well as its insurer, is prescribed by the one-year statute of limitations provided in Article 3536, LSA–Civil Code.

Before resolving the primary contention of the defendant, that is, that the payment of maintenance is not covered by the hold harmless agreement, it may be well to dispose of its other defenses. In its effort to defeat not only the basic action by Pure but the intervention by its insurer as well, the defendant invokes the Louisiana statute of limitations on tort actions. Since the contract in suit is a maritime contract[3] requiring the application of maritime law, while state statutes of limitation as such are not controlling, the

---

1. The provision in the contract reads:

    "I. Contractor obligates itself to save Pure harmless from liability on account of acts of negligence of willful misconduct on the part of Contractor's employees, as well as from any claims for damages, injuries or death sustained by the public, or by any employee of Contractor, when such damages, injuries, or death arise out of or in the course of employment incident to the operations provided for in this agreement; except that such liability on the part of Contractor shall not exist when such damages, injuries or death result from Pure's negligence."

2. The Subrogation provision of the policy reads:

    "The Company shall be subrogated to all the rights which the Assured may have against any other person or entity, in respect of any payment made under this policy, to the extent of such payment, and the Assured shall, upon the request of the Company, execute all documents necessary to secure to the Company such rights.

    "The Company shall be entitled to take credit for any profit accruing to the Assured by reason of any negligence or wrongful act of the Assured's servants or agents, up to the measure of its loss, or to recover for its own account from third parties any damage that may be provable by reason of such negligence or wrongful act."

3. D. M. Picton & Co. v. Eastes, 5 Cir., 160 F.2d 189.

invocation of the law of the forum as a guide in determining the maritime defense of laches is proper. Gardner v. Panama Railroad Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31; Morales v. Moore-McCormack Lines, 5 Cir., 208 F.2d 218. Defendant argues that since plaintiff's action of indemnity is based on a tort suffered by its employees in 1947, it is prescribed under the Louisiana one-year statute of limitations for tort actions. LSA–C.C. Art. 3536. It argues further that the fact that the payments of maintenance, for which plaintiff now seeks indemnity, were made within the statutory period of one year from the filing of this complaint does not revive the prescribed action nor create a new right of action in Pure which is not prescribed. Defendant rests its argument in this connection on St. Paul Fire & Marine Ins. Co. v. Standard Cas. & S. Co., La.App., 3 So.2d 463, and Board of Commissioners of Port of New Orleans v. City of New Orleans, 223 La. 199, 65 So.2d 313, claiming that these cases reversed the prior jurisprudence which seemed to have held otherwise.[4]

▉▉▉ With reference to Pure's claim, the defendant is relying on the wrong statute of limitations. Pure's claim is predicated on its contract with the defendant, which, it asserts, the defendant has breached by its judicially declared negligence in causing the explosion which injured Pure's employees. That Pure is correct in its contention admits of little doubt. The statute of limitations in Louisiana for breach of contract is not one year, but ten years. LSA–C.C. Art. 3544. When a tortfeasor negligently breaches its contract with another, that other may sue in tort or in contract. North Atlantic & Gulf S. S. Co. v. New Orleans Stevedoring Co., D.C., 111 F. Supp. 413, affirmed 5 Cir., 213 F.2d 859;

D. M. Picton & Co. v. Eastes, supra; C. W. Greeson Co. v. Harnischfeger Corp., 219 La. 1006, 54 So.2d 528; Transportation Equipment Co. v. Younger Bros., La.App., 34 So.2d 347; American Heating & Plumbing Co. v. West End Country Club, 171 La. 482, 131 So. 466; Illinois Central Railroad Co. v. New Orleans Terminal Co., 143 La. 467, 78 So. 738. Here Pure has sued for breach of contract and if the Louisiana statute of limitations is to be used as a guide in determining laches, that guide is ten years.

With reference to the claim of the intervenor, however, a more serious problem is presented. This insurer, while subrogated in law and by express policy provision to Pure's rights against tortfeasors, may not claim rights under a nonassignable contract[5] to which it was not privy and in which it was not a beneficiary. The contract between Pure and Geotech is such a contract and the hold harmless agreement therein, while protecting Pure, does not inure to the benefit of its underwriter. Consequently, the intervenor is relegated to Pure's rights in tort, as distinguished from contract, against defendant, and, on the basis of the Louisiana authorities cited herein, laches may well have run on those rights.

▉ But it is not necessary to resolve this problem. If Pure's underwriter has not been subrogated to Pure's contractual rights against the defendant, then Pure may assert those rights, having to account to its underwriter therefor under the express subrogation in the policy, effective as to Pure if not as to Geotech, and under general principles of equity. Chicago, St. Louis & New Orleans Railroad Co. v. Pullman Southern Car Co., 139 U.S. 79, 11 S.Ct. 490, 35 L.Ed. 97. Rule 17(a) of the Federal

4. Foster & Glassell Co. v. Knight Bros., 152 La. 596, 93 So. 913; Appalachian Corporation v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539.

5. The nonassignment clause of the contract between Pure and Geotech reads:

"A. It is agreed that this contract shall extend to and be binding upon the successors and assigns of the parties hereto, but neither shall have the right to assign this contract without the consent of the other in writing."

Rules of Civil Procedure, 28 U.S.C.A. cannot defeat these substantive rights.[6]

Geotech's primary defense, while supported by some authority, is likewise unavailing. Geotech admits the application of the principle of indemnity under the general maritime law and suggests that if Pure's payment to its seamen, on which it seeks reimbursement here, were based on Pure's tort liability, the principle of indemnity would apply. Since a seaman's claim for maintenance is based on contract and not on tort,[7] defendant denies the application of the indemnity principle and relies most heavily on The Federal No. 2, 2 Cir., 21 F.2d 313.

It must be owned that The Federal No. 2 plainly supports defendant's position and may still be the law in the Second Circuit[8] in spite of Seely v. City of New York, 2 Cir., 24 F.2d 412, and The Jefferson Myers, 2 Cir., 45 F.2d 162, which seem to hold to the contrary. The Supreme Court itself has given some support, although very meager, to defendant's position in United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067. With the exception of these cases, however, all of the jurisprudence in point is to the contrary.[9]

[5] But again we do not have to resolve this question on general principles of law alone. In all of the cases cited in support of defendant's position, there was no express contract of indemnity between the parties. Here, as has been shown, Geotech expressly contracted to hold Pure harmless from liability caused by the negligence of Geotech's employees, and the liability of Pure for maintenance to its seamen was caused by the negligence of Geotech. Under the plain language of the contract then, there can be no question but that Geotech is responsible to Pure for moneys paid to its seamen for maintenance, the amount thereof having the nonprejudicial approval of Geotech as to quantum.

■■ In addition to the claim for moneys paid to seamen for maintenance, Pure claims costs, expenses and attorneys' fees incurred in defending the seamen's actions, relying again on the hold harmless clause of the contract. Defendant does not deny these expenses are covered by the hold harmless agreement. There seems little question that, whether the indemnity is implied in law or arises under contract, reasonable counsel fees and costs incurred in resisting the liability indemnified against may be recovered. 27 Am.Jur., Indemnity, § 27; 42 C.J.S., Indemnity, § 24. Claims of liability against Pure arising out of the explosion were filed in the amount of $170,000, and Pure incurred attorneys' fees, costs and expenses in connection with these claims in the amount of $6,609.53.[10] The fact that only $7,000 of the claimed liability of $170,000 was actually paid by Pure does not reflect adversely on the amount of these fees. Rather it bespeaks the professional efficiency with which these claims were handled. The fact that counsel are suc-

---

6. Rule 17 (a), Fed.Rules Civ.Proc. reads: "(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest; * * *."

7. Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107; Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368.

8. See Irwin v. United States, D.C., 111 F. Supp. 912.

9. Jones v. Waterman Steamship Corp., 3 Cir., 155 F.2d 992; Seely v. City of New York, supra; Thibeault v. Boston Towboat Co., D.C., 28 F.Supp. 152; Sillanpa v. Cornell Steamboat Co., 1954 A.M.C. 1189.

10. In its original complaint, plaintiff limited its demand for fees and expenses to those claims which were compromised with the nonprejudicial approval of defendant, all other claims having been judicially denied or abandoned. Invoking Rules 15 (b) and 54 (c), plaintiff now demands fees and expenses incurred in resisting all claims covered by the hold harmless agreement.

cessful in resisting claims should not mitigate their fee.[11]  Berry v. Slocomb, 2 La.Ann. 993.

Judgment accordingly.

11. The fact that the entire $6,609.53 has been paid in due course by Pure provides additional evidence of the reasonableness of these charges.