**McMILLAN WELDING & MACHINE WORKS, Libelant,**

v.

**GENERAL TOWING COMPANY and the Individual Partners thereof and BARGE TJ-248, Its Tackle, Apparel, Furniture, etc., Respondents.**

**No. 5309.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 5, 1965.

Wynn, Hafter, Lake & Tindall, Greenville, Miss., Lemle & Kelleher, George A. Frilot, III, George B. Matthews, Murphy Moss, New Orleans, La., for McMillan Welding & Machine Works.

Rene A. Pastorek, Gretna, La., for General Towing Co. and its individual partners.

Garrett & Carl, Clifton S. Carl, New Orleans, La., for General Towing Corp.

Milling, Saal, Saunders, Benson & Woodward, Neal D. Hobson, New Orleans, La., for Thomas Jordan, Inc.

Nathan Greenberg, Gretna, La., for Jack Neilson, Inc.

AINSWORTH, District Judge:

This is a libel filed by McMillan Welding & Machine Works to recover for repair services rendered to the barge TJ–68. The libel is brought in personam against the General Towing Company and/or Corporation, and the individual partners thereof in solido, and in rem against the barge TJ–68 owned by Thomas Jordan, Inc., which barge at the time was under written charter to Jack Neilson, Inc.

On June 14, 1960, the master of the tug CAPTAIN MARIE, owned by General Towing Company and under verbal charter to General Towing Corporation, engaged libelant to render emergency repair services to the TJ–68 which had been damaged while in tow of the CAPTAIN MARIE. The TJ–68 is a dumb barge, and at the time she was repaired was located about 40 miles from Greenville, Mississippi, in the Mississippi River. After checking the credit of General Towing Company and Thomas Jordan, Inc., libelant undertook to repair the barge TJ–68. The barge was listing badly and was in danger of sinking, which necessitated extensive pumping. However, the water was coming into the barge faster than she could be pumped. More pumps were obtained and a marine diver was engaged by libelant who was successful in plugging the hole in the barge so that she could be pumped. Thereafter, the barge was run upon the shore of the Mississippi so that the welding of the hole could be accomplished. In all, the repairs required three days and nights.

Libelant submitted its bill to General Towing Company, which considered the bill to be excessive. Thereafter, extensive correspondence took place between libelant and the towing company. Finally, after attempts to amicably settle its claim, libelant filed this suit on July 13, 1962. After suit was filed Jordan attempted to get General Towing and Neilson to defend the suit and to hold Jordan harmless and protect the TJ–68 from seizure. Failing in this, Jordan entered the suit as claimant of the TJ–68, answered the libel and impleaded Neilson under its contract of indemnity, and sought judgment over against Neilson and General Towing Company.

Libelant's claim is made against the General Towing Company and the individual partners thereof, in personam and in solido, and against General Towing Corporation, charterer of the CAPTAIN MARIE. The claim is based on the fact that the master of the CAPTAIN MARIE procured the repairs for the barge on behalf of the General Towing Company/Corporation. The master and crew of the CAPTAIN MARIE were employed by General Towing Corporation. Libelant's claim against the barge in rem is based on 46 U.S.C.A. § 971, which creates a lien on vessels for services, repairs, etc., under the circumstances there expressed. By supplemental libel, libelant also asserts in personam liability against Jordan, as owner of the barge, under the theory of quasi contract or unjust enrichment.

Thomas Jordan, Inc. contends that it is not liable for the repairs and alternatively since the damage to the barge was caused by the owners and/or operators of the CAPTAIN MARIE, should it be cast in judgment, it asserts its claim over against General Towing Company and/or Corporation. Jordan's claim over against Neilson is one of indemnity under the written charter agreement between Jordan and Neilson. This right of indemnity has never been denied by Neilson. Jordan also seeks $1,000 as reasonable attorney's fees for having been compelled to defend this suit.

Neilson contends that the claims of both libelant and Jordan are barred by laches since it was not brought into this suit until May 21, 1965.

The defense of the General Towing Company, the partnership, is that the tug

CAPTAIN MARIE was under charter to the General Towing Corporation; that the corporation was formed for the purpose of operating the CAPTAIN MARIE and to provide marine services. The corporation paid the notes made for the purchase of the tug, paid the insurance, hired the crew, maintained corporate records and a banking account, made all disbursements for repairs, supplies, etc. The partnership arose merely for the purchase of the CAPTAIN MARIE. There was never any formal partnership agreement; it had no books or records and no accounts. The partnership asserts that the claim herein arose out of corporate activity and was not that of the partnership or of the individual members.

The defense of the corporation goes to the amount of the claim rather than its validity. It asserts that the charges are excessive.

■ We hold at the outset that the defense of laches is not well-founded. Both Neilson and Jordan knew of the claim made by libelant long before they were brought into this suit. This is evidenced by correspondence between the parties. Jordan received notice on July 17, 1962, and shortly thereafter on August 23, 1962, it made demand on Neilson to defend the suit and to hold it harmless under its written charter agreement. In addition to actual notice, neither party has been able to show prejudice. The only claim of prejudice is that the CAPTAIN MARIE was sold at a Marshal's sale in February 1963, thus depriving claimants of a lien against the tug. However, it will be noted that the sale took place some seven months after this suit was instituted, ample time within which to effect a seizure. Furthermore, we will not penalize libelant for attempting to settle its claim out of court. The defense of laches is therefore rejected.

■ As to the reasonableness of the bill, we hold that there is no satisfactory evidence to contradict the amount claimed of $3,147.36. Respondents produced a marine surveyor who admittedly did not examine the barge or repairs in question but made his judgment after examining only the bill submitted by libelant to General Towing Company. He suggested a figure of $2,500 which was not acceptable to General Towing Company because this was the deductible provided in its policy of marine insurance. Obviously the surveyor had an interest in submitting that particular figure. We are convinced that the amount claimed is fair and reasonable. No reliable evidence to the contrary has been shown by respondents. Libelant is entitled to recover on its claim.

The General Towing Corporation's employee ordered the repairs and has not denied its liability in this respect. It objected only to the amount of the charges and to the late date at which "fault" was brought into the case. However, its objection to the question of "fault" goes only to the impleading petition filed by Thomas Jordan, Inc., on the morning of the trial. It does not affect the claim of libelant. In view of the fact that there is no evidence as to how the accident occurred, or who was at fault, we cannot decide that claim on the merits. We hold that the libelant's claim against General Towing Corporation is valid.

■ Libelant's claim against the General Towing Company and the individual partners thereof is denied because the partnership and individuals had nothing to do with the events or activities that brought on this litigation. The corporation was the charterer and owner pro hac vice of the CAPTAIN MARIE. The use to which the tug was put by the corporation was corporate activity. It is true that the partners of the General Towing Company were also the incorporators and officers of the General Towing Corporation. However, it is fundamental that a corporation has a separate and distinct existence apart from its stockholders and officers, and in the absence of fraud, the liability of the corporation is not the liability of the shareholders or officers thereof. See LSA–R.S. 12:19 and L. L. Ridgway Company v. Marks, La.App. 4 Cir., 1962, 146 So.2d 61. There is no allegation by any party that the individuals of the General Towing Corpo-

ration have perpetrated a fraud or that they are guilty of some criminal wrong-doing. Therefore, there can be no in personam liability on the part of the General Towing Company or of the individual partners thereof.

■ Libelant's claims against Thomas Jordan, Inc. in personam, and against the barge TJ–68 in rem, are well-founded. Under 46 U.S.C.A. § 971, libelant is entitled to a lien against the TJ–68. Repairs were made to the vessel upon the order of a person authorized by the owner within the meaning of the statute. It is true that Jordan had no direct connection in causing the repairs to be made. However, under 46 U.S.C.A. § 972 a "person authorized" includes a "master" and his authority arises by presumption. Furthermore, the persons presumed to have authority under 46 U.S.C.A. § 972 include such officers and agents when *appointed by a charterer,* or by an owner pro hac vice, as provided in 46 U.S.C.A. § 973. The only admonition against a repairman is that he is presumed to have knowledge of the charter and cannot claim a lien when the charter prohibits the incurring of liens on the credit of the vessel. However, the charter between Jordan and Neilson makes no such prohibition. In fact, the charter agreement contemplates that liens would arise since it states:

> "The Charterer shall indemnify and hold harmless Thomas Jordan, Inc. against any liens of any nature upon the barge and against any claims or demands against Thomas Jordan, Inc., arising out of the condition or operation of the barge during the charter period which may be asserted against Thomas Jordan, Inc.  *  * "

If Jordan wanted to protect itself it had a ready means available by simply prohibiting the creating of maritime liens in its charter, which it did not do. See Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1940). Jordan cannot now be heard to complain that a lien has been perfected against its vessel.

Jordan is liable to libelant in personam because it owned the vessel repaired and has received the benefits of those repairs and did not prohibit reliance on the credit of the vessel.

■ In holding Jordan liable, we recognize its claim over against Neilson under its charter agreement. The language of the indemnity agreement is clear and is not controverted by Neilson. Likewise, Jordan is entitled to $1,000 as reasonable attorney's fee in defending this suit. Jordan is the indemnitee under its agreement with Neilson and was under no obligation to undertake to defend this claim. The defense of this action rested with Neilson and General Towing Corporation. It was only after demand was made on both that Jordan appeared to protect its interest in the TJ–68. It was the refusal of Neilson and General Towing Corporation to defend which compelled Jordan to defend the very circumstance for which it was to be indemnified. Having been compelled to resist the liability for which the indemnity issued, Jordan is entitled to the attorney's fees as claimed, which are fair and reasonable. See Rederi A/B Dalen v. Maher, La.App. 4 Cir., 1962, 303 F.2d 565; Pure Oil Company v. Geotechnical Corp. of Delaware, E.D.La.1955, 129 F.Supp. 194.

■ Jordan's claim over against the General Towing Corporation is denied because there has been no proof of fault in this regard. The only evidence on this point came by way of an off-hand comment from a witness while testifying. It was not in response to a question directed at proof of fault, for in fact, there was no attempt to prove fault during the trial.

Accordingly, the Clerk will prepare a decree for judgment in libelant's favor against General Towing Corporation and Thomas Jordan, Inc., in personam and in solido, and against the barge TJ–68 in rem for $3,147.36 with interest from July 27, 1960, and Thomas Jordan, Inc. will have judgment over against Jack Neilson, Inc. for full indemnity under

its charter agreement for any amount it is obliged to pay under this judgment plus $1,000 for reasonable attorney's fees.

Decree accordingly.