BARNETTE, Judge.
This is a suit for a money judgment in the sum of $2,000 plus interest and costs brought against the president of a corporation in his individual capacity on account of the payment of that sum by plaintiff to the corporation president for the purchase of a 3-percent interest in the Panamanian Flag vessel, the SS. “Eagle”. Plaintiff contends that the stock certificate which he was to receive as evidence of his corporate investment was never delivered. From a judgment for defendant, rejecting plaintiff’s demand, he has appealed,
Plaintiff, whose name was Panagiotis D. Papadopoulos, but which since the execution of the contract in question, has been changed to Pete Patterson, entered into the following contract with defendant, as president of the corporation:
“New Orleans, Louisiana
August 25, 1962
“This agreement entered into by and between Panagiotis D. Papadopoulos and Stefanos Koutsouradis, President of the VIAREYES COMPAÑIA NAVIERA, S.A., a corporation registered at Panama, Panama, on the date and at the place herein-above first written.
“WHEREAS, VIAREYES COM-PAÑIA NAVIERA, S.A. is desirous of securing additional funds for the operation of the business of said corporation, and
“WHEREAS, Panagiotis D. Papado-poulos, is desirous of advancing the sum of Two Thousand Dollars $(2000.00) to said corporation for and in consideration of the transfer to said Panagiotis D. Papadopoulos an undivided 3% interest in and to one certain vessel, owned by said corporation and registered under the *545 name S/S Eagle and under Panamanian Flag, by said corporation, the said sum of money being dollars of the United States of America,
“NOW, THEREFORE, it is agreed by and between Panagiotis D. Papadopoulos and Stefanos Koutsouradis, President of VIAREYES COMPAÑIA NAVIERE, S.A., that, for and in consideration of the payment of the sum of Two Thousand Dollars, $(2000.00) in the currency of the United States of America to said Stefanos Koutsouradis, receipt of which sum is hereby acknowledged and full acquittance and discharge given, the said Stefanos Koutsouradis, President of said corporation does, by these presents, agree that he will secure a resolution of the Board of Directors of said Corporation authorizing the transfer of an undivided 3% interest in and to that certain vessel, owned by said corporation and registered under Panamanian Flag as the S/S Eagle, and that the said undivided interest will be transferred in writing to said Pan-agiotis D. Papadopoulos by said corporation all in accordance with the requirements of the laws of the Republic of Panama, which transfer will be consummated on or before the next scheduled meeting of the Board of Directors in 1962
“WITNESS our signatures this 25th day of August, 1962, AD at New Orleans, Louisiana, U.S.A.
VIAREYES COMPAÑIA NAVIERA, S.A.
“WITNESSES:
BY: [Signed] Stephen Cotsoradis President
[Signed] Panagiotis D. Papadopoulos Panagiotis D. Papadopoulos”
There is no testimony in the record except that of the plaintiff and defendant. From this testimony it is apparent that the SS. “Eagle” was an ocean-going vessel, operating on very limited financial support, and was hard pressed to meet ordinary expenses, such as port insurance and necessary, repairs. Plaintiff, a seaman in the employ of another shipping company, and defendant were personal friends, and plaintiff advanced sums to defendant to meet some of the ship’s pressing needs. Out of these transactions, the foregoing contract was entered to protect the plaintiff and to assure him an undivided interest in the vessel for the $2,000 he advanced. There is nothing in the testimony from which we can conclude that the money was misappropriated by defendant or that it was not in fact used as intended for the benefit of the corporation in its operation of the vessel.
Defendant testified that pursuant to the contract a resolution was adopted at the meeting of the Board of Directors in September, 1962, recognizing Patterson’s 3-per’cent interest in the vessel and authorizing the issuance of stock. The certificates were never issued, but Patterson was recognized as a shareholder and co-owner of the vessel. The only evidence of ownership ever delivered to Mr. Patterson was a copy of the foregoing contract and receipt.
The ship ran aground on the coast of California in December, 1962, and claim was made on the London underwriters through a broker. In this connection a cablegram was dispatched by defendant, as president of the corporation, in which Patterson was named as a stockholder and part owner of the vessel. The defendant testified that, upon advice of the broker, a second cablegram was dispatched recalling the first one and withdrawing Patterson’s name as stockholder and part owner. No further explanation was given, and we fail to understand the reason for this.
Plaintiff apparently makes no denial that the Board of Directors did adopt a resolution as claimed, and says in his brief: “Plaintiff failed to receive his stock certificates because of the President’s refusal to issue the stock to him in contravention of the Board’s resolution.” This alleged refusal he contends was an act of malfea- *546 sanee on the part of the defendant, president of the corporation, which “ * * * malfeasance rendered Mr. Cotsoradis personally liable on the contract for the transfer of a 3% interest in the Corporations’ [sic] vessel, the S/S EAGLE, in the form of stock certificates, in exchange for appellant’s consideration of $2,000.00.” He has not sued for specific performance, hut prays for a money judgment of $2,000 against Mr. Cot-soradis personally.
The authorities cited by plaintiff in his brief, upon which he relies to establish the personal liability of Mr. Cotsoradis, are sound in principle, but they simply do not apply to the situation presented in this case. At most, the actions of the corporation’s president would be a breach of some duty he owed to the corporation to execute the orders of its Board of Directors as contained in its resolution, and this breach of duty might support a cause of action for specific performance against the corporation. There is no proof of malfeasance, fraud, breach of contract, or violation of duty to plaintiff upon which a personal liability can be founded. The plaintiff has failed to show a cause or right of action against Mr. Cotsoradis personally. LSA-R.S. 12:19(B), (C) ; McMillan Welding & Mach. Works v. General Towing Co., 247 F.Supp. 402, 405 (E.D.La.1965); Shreveport Sash & Door Co. v. Ray, 159 So.2d 434, 438 (La.App.2d Cir.1963); L. L. Ridgway Co. v. Marks, 146 So.2d 61 (La.App. 4th Cir.1962); 19 C.J.S. Corporations § 839 (1940); 13 Am. Jur. Corporations §§ 1044, 1045 (1938).
Defendant testified that the underwriters settled the claim for damage or loss of the vessel at seventy or eighty thousand dollars; the exact amount was not given. This sum, according to defendant, is now in the hands of a New York attorney who handled the claim for the corporation and is (or was at the time of trial) tied up in litigation with the attorney over an accounting. Defendant testified that, when that issue is settled, plaintiff will be paid his pro rata share along with the other shareholders. Whatever right plaintiff may have to insure that he will be paid from the funds in the hands of the New York attorney does not address itself to this court.
The judgment appealed from is affirmed at plaintiff-appellant’s cost.
Affirmed.