225 So.2d 114 (1969)
AMERICAN AUTOMOBILE INSURANCE COMPANY et al.
v.
TWENTY GRAND TOWING COMPANY, Inc.
No. 7735.
Court of Appeal of Louisiana, First Circuit.
July 2, 1969.
*115 Davidson, Meaux, Onebane & Donohoe, by James E. Diaz, Lafayette, for appellants.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, by E. Jack Green, Jr., New Orleans, for appellee.
Before LANDRY, SARTAIN and MARCUS, JJ.
LANDRY, Judge.
Plaintiffs, The California Company (California), and its insurer, American Automobile Insurance Company (American), appeal from the judgment of the trial court rejecting their monetary claims against defendant, Twenty Grand Towing Company, Inc. (Twenty Grand). The demands are for recovery of monies paid the widow and heirs of one J. W. Lacombe, an offshore employee of California, who was killed while aboard the M/V John T. Davis, in the Gulf of Mexico. Plaintiffs' claims are based on a charter agreement wherein Twenty Grand contracted to man, operate and maintain the Davis while said vessel was engaged in servicing California's offshore oil drilling operations. Said contract contained a hold harmless clause in which Twenty Grand agreed to indemnify California against all claims based on the acts of the operator in the performance of the charter.
In substance plaintiffs' petition relates Lacombe was killed April 8, 1958, due to negligence on the part of defendant's agents, employees or representatives. California is reputed to have been insured by American against exposure to claims of the former's employees for state and federal compensation benefits. American allegedly commenced making payments in the sum of $35.00 weekly to Lacombe's widow and three minor children. On the date of institution of this suit, July 20, 1961, payments to the widow and children of Lacombe totaled $6,020.00. Subsequently, on October 11, 1961, an award was made by the Deputy Commissioner of the Seventh Compensation District, Bureau of Employment Compensation, U. S. Department of Labor (Commissioner), pursuant to the Longshoremen's and Harbor Workers' Compensation Act, determining the Lacombe widow and heirs entitled to an award of $10,983.42, for the death of their husband and father, respectively, subject to credit for all payments made by American up to the time of the award. According to the Commissioner's findings, decedent's death occurred when he struck his head while swinging from the crew boat to the well structure by means of a rope. As a result of the mishap decedent fell into the water and drowned.
*116 Plaintiffs' petition, as supplemented and amended, prays for recovery of said sum of $10,983.42, and for "further sums and amounts which petitioner may be obligated and will pay for at anytime or might become obligated for in the future to pay as a result of the death of J. W. Lacombe * * *."
Defendant's liability is attributed to alleged negligence on the part of its employees and the provisions of Paragraph 7 of the operating or charter agreement, the significant portion of which reads as follows:
"OPERATOR (Twenty Grand) agrees that it will hold CHARTERER (California) harmless from any and all claims or demands made against CHARTERER, or the vessel which may be based on the acts of OPERATOR, or its employees or subcontractor, while performing the work herein undertaken." (Parenthetical notation ours.)
On August 22, 1961, defendant answered plaintiffs' complaint and simultaneously filed peremptory exceptions of no right or cause of action, one year's prescription and additionally plead the Federal doctrine of laches. It appears that on December 11, 1961, a hearing was held in the trial court on defendant's exceptions and plea of laches, all the mentioned issues being tried on the face of the pleadings with no evidence being adduced by either party. Simultaneously the matter was ordered submitted on briefs. No further action appears to have been taken until June 19, 1964, when plaintiffs moved for trial of defendant's exceptions. Thereafter, on June 26, 1964, judgment was rendered referring the plea of laches and exception of prescription to the merits and overruling defendant's exceptions of no right and no cause of action. After another lapse of almost two years plaintiffs, on April 27, 1966, filed second supplemental and amending petitions following which on April 15, 1968, defendant's exceptions were re-argued and taken under advisement. Finally, judgment was rendered June 4, 1968, dismissing and rejecting plaintiffs' demands.
The judgment herein appealed does not specify which exceptions or pleas of defendant were sustained. The decree merely adopts as the court's own views a considerable portion of the memorandum submitted by defendant. The portion quoted treats of the plea of prescription, the Federal doctrine of laches, the alleged lack of privity of contract between American and the contracting parties, California and Twenty Grand, and the right of California to bring the action at all. In this latter regard it is contended California has subrogated its rights to American which has paid all sums to date, therefore California has sustained no loss for which it might recover in these proceedings, defendant relying upon LSA-C.C.P. Article 697 as authority for this position. For reasons hereinafter expressed, we reverse the judgment of the lower court and remand this matter to the trial court with instructions to proceed further herein as directed.
It is apparent that defendant's exceptions and pleas involve legal principles both state and federal in concept and nature. Since, however, the contract sued upon is unquestionably maritime in nature, this controversy must be determined pursuant to the laws of admiralty. It is settled Federal law that the question of whether a contract is governed by maritime law depends solely upon the subject matter of the agreement. Grant Smith-Porter Ship Co. v. Rhode, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008. In the Rhode case, supra, the rule is stated thusly in 257 U.S., page 476, 42 S.Ct., page 158, 66 L.Ed., page 324:
"The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this Court that it must now be treated as settled." (Extensive citations omitted.)
*117 Although the contract of indemnity sought to be enforced herein does not appear of record in its entirety, we nevertheless have no difficulty in concluding it subject to the rules and laws of admiralty proceedings. From the allegations of the petition and the arguments made in briefs, it is abundantly clear defendant undertook, for a price, the furnishing, manning and maintenance of a vessel to be used in servicing certain offshore oil wells owned by California and situated in the Gulf of Mexico, beyond state boundaries. It follows that the nature of the services to be discharged characterize the transaction as one subject to admiralty jurisdictions. We shall, therefore, proceed accordingly, Jansson v. Swedish American Line, 1 Cir., 185 F.2d 212, 30 A.L.R.2d 1385.
Also appropos the matter at hand is the fixed rule that, in cases involving maritime contracts, admiralty rules and laws apply to the exclusion of conflicting state rules and statutes, whether the matter be tried in the Civil side of the Federal Courts or in State Courts where such trials are permissible under Federal Rules. The rule, in this regard, is expressed in Jansson, supra, as follows:
"If the `Constitution itself adopted and established as part of the laws of the United States, approved rules of the general maritime law', and if, when a cause of action cognizable in admiralty is sued on at common law, either in a state court or on the law side of a federal district court, the court must apply the general maritime law rather than the law of the state of the forum * * *."
Considering first the contention California has no rights in this controversy because of the total subrogation thereof to American, we find we cannot adjudicate this issue upon the record as presently constituted. If, as defendant maintains, California has indeed subrogated to American all of the former's claims against defendant, California is without right to assert any claim under the indemnity agreement. Our Code of Civil Procedure, Article 697, provides that in instances of subrogation, either conventional or by operation of law, the right shall be enforced judicially by the subrogor and subrogee when the subrogation is partial, and by the subrogee alone when the entire right is subrogated. See also the Official Revision Comments to Article 697, supra.
However, in the instant matter, California urges it has sustained loss under the provisions of the insurance policy issued by American. In this respect, California argues the policy in question requires retrospective examination of the premiums charged by the insurer and a consequent scaled increase in future premiums directly proportioned to the expense incurred by American in discharging its obligations under the policy. Stated otherwise, the argument is California's premiums, for years succeeding that in which this particular loss was sustained, are subject to escalation depending upon the outcome of this matter and any such surplus incurred allegedly becomes the liability of defendant under the indemnity agreement.
If, as California argues, such a loss was or may be sustained by it and was not subrogated to its insurer, California is the proper party to assert claim therefor, provided the terms of the indemnity contract covers loss of such nature; if not, California should be dismissed because of having subrogated all loss incurred. In any event, the issue is a matter for inquiry in the trial court's reconsideration of this cause.
We find no merit in defendant's contention that American is without a right of action herein because of an alleged lack of "privity" of contract between American and the contracting parties, California and Twenty Grand. Defendant's reasoning is that American was not a party to the hold harmless agreement and therefore cannot take advantage of the terms of a contract to which it is not a party.
The insuring agreement between California and American expressly provides *118 for the subrogation of California's rights upon payment by American of claims against California. Under our state laws it matters not whether the subrogation be legal or conventional, in either event, the subrogee is substituted and figuratively placed in the shoes of the subrogor. To the extent of the subrogation, the subrogee is substituted to all the subrogor's legal rights and claims, both contractual and tortious, including such enforcement rights and remedies as possessed by the subrogor. La.C.C. Articles 2160, 2161, Motors Ins. Corp. v. Employers' Liability Assur. Corp., La.App., 52 So.2d 311.
Under the Federal law as well, the concept of subrogation, including both the contractual and tortious rights of the subrogor appears to be the clear majority view. See for example, Phoenix Indemnity Company v. Marquette Casualty Company, 5 Cir., 320 F.2d 486; Compania Anonima Venezolana De Navegacion v. A. J. Perez Exp. Co., 5 Cir., 303 F.2d 692. Pure Oil Co. v. Geotechnical Corp. of Delaware, D.C., 129 F.Supp. 194, seems to hold contrary to the above cited authorities but we find Pure Oil, supra, clearly distinguishable from both the cited authorities and the case at hand. The basis of the ruling in Pure Oil, supra, was the presence of a non-assignability clause in the hold harmless agreement involved. Relying on the non-assignability provision, the Court in Pure Oil held subrogation could not take place. Obviously the court therein confused "assignment" with "subrogation." The basic difference between "assignment" and "subrogation" is that the former involves transfer or alienation whereas the latter contemplates substitution or replacement. See Motors Ins. Corp., supra.
Evidently the trial judge also predicated his decision on the doctrine of laches, a principle foreign to our law but long since recognized in Admiralty. The rule is excellently summarized as follows in McDaniel v. Gulf & South American Steamship Co., 5 Cir., 228 F.2d 189:
"Laches consists of two elements, inexcusable delay in instituting suit and prejudice resulting to the defendant from such delay. Its existence depends upon the equities of the case, and not merely upon the lapse of time."
Considering the applicability of Admiralty Law herein, the issue of prescription, raised by plaintiffs as well as defendant, must be adjudicated in the light of the Federal doctrine of laches. In this regard, defendant argues the one year prescriptive period applicable to tort actions under our state law, La.C.C. Article 3536, is controlling. Adversely, plaintiffs maintain the ten year prescriptive period governing suits on contracts, La.C.C. Article 3544, applies herein.
It appears well established in the Federal Jurisprudence that state statutes of prescription or limitation, when raised in conjunction with a plea of laches, serve only as one factor to be considered and weighed in determining whether the essential element of laches, namely, delay prejudicial to the defendant, has resulted and the principle of laches should therefore be applied. The approach to and solution of this problem has been clearly and concisely put in Czaplicki v. "S. S. Hoegh Silvercloud", 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387, from which we hereinafter quote at some length.
In the Czaplicki case, supra, a longshoreman injured in 1945 filed a libel in 1952, against the vessel, her owners and operators. Three weeks following his injury, Czaplicki elected to receive compensation rather than proceed against third parties. The trial court dismissed the libel on finding plaintiff's election to receive compensation operated as an assignment of his rights against third parties therefore Czaplicki was not a proper party libellant. On appeal, the Court of Appeal dismissed the libel on the ground of laches, a defense plead in the trial court by each defendant but the issue was not passed on by the court of original jurisdiction because of its finding on the question of assignment. In *119 sustaining the plea of laches, the Court of Appeal did so solely on the finding that under the two state statutes of limitations which might be applicable, namely, New York and New Jersey, time for filing suit had expired.
In reversing the decision of the Court of Appeal on the issue of laches and remanding the matter to the trial court for further proceedings, the court indicated the doctrine of laches was not per se applicable notwithstanding prescription (the statute of limitations applicable in the state courts) had run. The court in ordering the matter remanded to the trial court for further proceedings stated the rule to be as follows:
"It is well settled, however, that laches as a defense to an admiralty suit is not to be measured by strict application of statutes of limitations; instead, the rule is that `the delay (sic) which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case.' The Key City (US) 14 Wall. 653, 660, 20 L.Ed. 896, 898. In cases where suit has been brought after some lapse of time, the question is whether it would be inequitable, because of the delay, to enforce the claim. Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743, 747, 162 A.L.R. 719; Southern Pacific Co. v. Bogert, 250 U.S. 483, 488, 489, 39 S.Ct. 533, 63 L.Ed. 1099, 1106, 1107. `Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief.' Gardner v. Panama R. Co., 342 U.S. 29, 31, 72 S.Ct. 12, 96 L.Ed. 31, 36. This does not mean, of course, that the state statutes of limitations are immaterial in determining whether laches is a bar, but it does mean that they are not conclusive, and that the determination should not be made without first considering all the circumstances bearing on the issue.
In this case, the District Court never passed on the defense of laches, which although properly put in issue was made irrelevant by the holding that, because of the statutory assignment of his right of action, Czaplicki could not maintain this action. Not only was there no decision on laches, but there was never an opportunity for Czaplicki to introduce evidence to justify the delay, since the suit was dismissed after preliminary hearings and argument on the issue of Czaplicki's `standing.'
When the case reached the Court of Appeals, therefore, the record was incomplete on the issue of laches. There is nothing in the record to show that Czaplicki was given any more opportunity in the Court of Appeals to explain the delay than he had been given in the District Court. The only `finding' made by the Court of Appeals was that the running of the statutes of limitations constituted laches, and that, as we have stated, was insufficient. From all that appears, Czaplicki may have failed to bring suit earlier because he relied on the assignee of the right of action to enforce what was presumably an interest common to both of them. The record does not disclose when Czaplicki discovered the assignee's conflicting interest, or whether there has been unjustifiable delay since that discovery. Nor has there been opportunity to prove the statement, made in an affidavit to the District Court, that the delay has in no way prejudiced the respondents. These are questions on which the parties should have been allowed to present evidence. The present record is inadequate to justify a holding that this action was barred by laches.
Since `the existence of laches is a question primarily addressed to the discretion of the trial court', Gardner v. Panama R. Co., supra, 342 U.S. at p. 30, 72 S.Ct. at p. 15, we remand the case to the District Court for further proceedings not inconsistent with this opinion."
From the foregoing, it is clear that application of the doctrine of laches does not depend upon a strict interpretation of prescription *120 statutes in matters of this nature. Rather the rule is that the delay which will defeat a suit of this kind depends upon the equities attending each particular case. It appears the issue is to be judged not on the basis of whether the statute of limitations has or has not run under the prescriptive laws of the state of the forum but whether, because of the delay, it would be unjust to enforce the claim. The cited authority clearly indicates that, where the time element would appear to indicate laches, plaintiff must be accorded an opportunity to explain the delay. The decision further points out that the mere running of the statute of limitations does not per se constitute laches as evidently held by the Court of Appeal.
Therefore, if we are correct in our interpretation of the Federal doctrine of laches as hereinabove set forth, it is immaterial whether under state law this cause is subject to the prescriptive period of one year as contended by defendant or that of 10 years as urged by plaintiffs. If, as held in Czaplicki, supra, the mere running of a state prescriptive period does not per se constitute ground for application of the doctrine of laches, we believe the correlative of the proposition to be that the fact that prescription has not run under state law does not necessarily preclude application of the laches rule. We believe it follows, in either event, neither prescriptive period urged is controlling. It also follows that in either case, the statute is to be viewed merely as one aspect of the entirety of surrounding pertinent events in determining (1) that the delay was inordinate under the peculiar circumstances of this case, and (2) that the belated enforcement of the claim would, in the light of the attending background hereof, result in an injustice or inequity to defendant.
In addition, Czaplicki, supra, unmistakably holds that where the doctrine of laches is an issue, plaintiff must be afforded an opportunity to explain the delay unless the record reflects on its face that an injustice has resulted to defendant. No such situation appears of record herein. Since the mere passage of time is not alone ground for application of the laches rule and the record discloses no injustice or disadvantage to defendant, plaintiff must be afforded an opportunity to explain the delay before proper disposition of the issue of laches may be made.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court rejecting and dismissing plaintiffs' demands be and the same is hereby annulled, reversed and set aside, and this matter remanded to the trial court for further proceedings consistent with the views herein expressed. All costs of this appeal to be paid by defendant, Twenty Grand Towing Company, Inc.
Reversed and remanded.